**George M. MITCHELL, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14258.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1958.

Decided June 19, 1958.

Mr. Robert B. Frank, Washington, D. C. (appointed by this court), for appellant.

Mr. John W. Warner, Jr., Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee. Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, BAZELON and DANAHER, Circuit Judges.

PER CURIAM.

Armed with a search warrant, officers found contraband drugs in Mitchell's house and in his immediate possession. His pre-trial motion to suppress, based upon a claim that the Commissioner issued the warrant without a proper showing of probable cause, was denied. The motion was renewed at the trial and again denied. Having been found guilty by the jury, Mitchell appeals.

He assigns as error the trial court's denial of the motion to suppress and its refusal to grant his motion for judgment of acquittal made at the conclusion

of the Government's proof. We think the District Judge acted correctly in denying the motions.

■ The search warrant was issued February 12, 1957, but was not executed until February 17, 1957. This delay was not made the basis of an objection, and appellant made no point of it on appeal. Nevertheless, although he notes that Mitchell "did not object to the warrant on the ground of unseasonable execution" and concludes that "That objection is therefore not available to him on appeal," our brother Bazelon discusses the matter and expresses the view that a search warrant is not executed "forthwith" when five days intervene between its issue and execution.

While it is true that Rule 41(c) of the Federal Rules of Criminal Procedure * provides that a search warrant "shall command the officer to search forthwith the person or place named for the property specified," subsection (d) of the same Rule begins: "The warrant may be executed and returned only within 10 days after its date." Thus the federal rule defines the word "forthwith" by limiting the time of the search to ten days after the issuance of the warrant. Sgro v. United States, 1932, 287 U.S. 206, 53 S. Ct. 138, 77 L.Ed. 260; Murby v. United States, 1 Cir., 1924, 2 F.2d 56.

Affirmed.

BAZELON, Circuit Judge (concurring).

At 3:45 P.M. on February 12, 1957, two police officers applied to the United States Commissioner for a warrant to search appellant's home, stating under oath that they had reason to believe that "on the premises * * * there is now being concealed" certain narcotics paraphernalia. In a supporting affidavit, the officers stated (1) that they had received information on February 3, 1957 from a reliable informant that appellant was selling narcotics at his home and had several peddlers working for him; (2) that

in the course of their observation of the premises during the week of February 4 through February 10, the officers had seen numerous narcotic addicts going in and out; and (3) that the officers believed that certain narcotics paraphernalia "are * * * on these premises * * *."

The same day (February 12) the Commissioner, finding (1) that the officers had sworn that they had reason to believe that "there is now being concealed" on the premises certain narcotics paraphernalia; and (2) that there was probable cause to believe that such property "is being concealed on the premises," issued the warrant whereby the Chief of Police or any member of the force was

"* * * commanded to *search forthwith* the place named for the property specified, serving this warrant and making the search at any time in the day or night and if the property be found there to seize it, leaving a copy of this warrant and a receipt for the property taken, and prepare a written inventory of the property seized and *return this warrant and bring the property before me within ten days of this date,* as required by law." [Emphasis supplied.]

The officers did not execute the warrant "forthwith." They waited five days until 2:00 A.M. of February 17, 1957, at which time they broke into the home and found appellant in bed with his wife. They searched the home and seized the evidence which formed the basis of appellant's conviction. The return of the warrant was made on February 18, 1957, within the ten days specified in the warrant.

On the motion to suppress the evidence, appellant attacked the sufficiency of the affidavit upon which the search warrant had been issued, but did not object to the warrant on the ground of unseasonable execution. That objection is therefore not available to him on appeal.[1]

---

* 18 U.S.C.A.

1. See People v. Oesterle, 1923, 225 Mich. 489, 196 N.W. 197.

Nevertheless, because of the importance, in the administration of criminal justice, of the question of seasonable execution of search warrants, I deem it necessary to set forth my views upon that question.

A search warrant is based upon a judicial determination of the *present existence* of justifying grounds—*i. e.*, at the time of issuance of the warrant.[2] "The purpose is to seize the thing alleged to be at that time in the place to be searched, to prevent its removal or further concealment." State v. Guthrie, 1897, 90 Me. 448, 38 A. 368, 369. "Warrants are directed to existing violations of the law and not to violations which may come into existence in the future." Simmons v. State, Okl.Cr.1955, 286 P.2d 296, 298. So, in the instant case, the warrant was based on the Commissioner's determination on February 12, 1957, that grounds for issuing it were then in existence.

The *in praesenti* basis of the warrant requires as a matter of logical necessity that it be served without delay, for, if there is delay in execution, the property to be seized may disappear. There is danger, especially in cases like the present one where the establishment to be searched is claimed to be a scene of recurring law violations, that the officer, acting on a five-day-old warrant, may seize property which came into existence after the warrant was issued. "In any case of delay it would be difficult, if not impossible, to prove the identity of the [things] found with those complained against. The prosecution would fail, resulting only in expense to the state, and expense and annoyance to the citizen." State v. Guthrie, supra, 38 A. at page 369.

Such are the considerations which have always caused magistrates to require the speediest possible execution of search warrants they issue. And, it goes without saying that the judicially-imposed requirement of speed is a mandate which controls the officer who executes the warrant. As the court said, in Guthrie, supra, 38 A. at page 369:

"It is an integral principle in our system of law and government that ministerial officers assuming to execute a statute or process upon the property or person of a citizen shall execute it promptly, fully, and precisely. The time of execution is as essential as any other element. * * *

"We think the foregoing propositions are applicable with especial directness and force to the nature and purpose of a search warrant. It is a sharp and heavy police weapon, to be used most carefully, lest it wound the security or liberty of the citizen.[3]"

The officer to whom the warrant is issued "has no discretion, but must proceed with diligence at the earliest reasonable opportunity, to make the search as commanded * * *." McDaniel v. State, 1926, 197 Ind. 179, 150 N.E. 50, 53. So, when the warrant commands a search to be made *forthwith*, "an unexplained delay of three days in serving such a warrant seems clearly needless, unreasonable, and hence unlawful, and destructive of the power of the warrant." State v. Guthrie, supra, 38 A. at page 369.[4] Whatever circumstantial elasticity must be allowed to the term "forthwith,"[5] the unexplained delay of five days in the case

---

2. Thus, when a search warrant expires by its terms, it cannot be renewed on the basis of the original affidavits; the magistrate must make a new determination of the grounds for issuing a warrant, based on new affidavits showing the grounds to be still in existence. Sgro v. United States, 1932, 287 U.S. 206, 53 S. Ct. 138, 77 L.Ed. 260.

3. See also People v. Fetsko, 1928, 332 Ill. 110, 163 N.E. 359, 360; People v. Wiede-

man, 1926, 324 Ill. 66, 154 N.E. 432; McDaniel v. State, 1926, 197 Ind. 179, 150 N.E. 50, 53; State v. Miller, 1932, 329 Mo. 855, 46 S.W.2d 541.

4. Similarly for a six-day delay and a ten-day delay in People v. Wiedeman and People v. Fetsko, respectively, supra, note 3.

5. Cf. Seymour v. United States, 1949, 85 U.S.App.D.C. 366, 177 F.2d 732.

before us is inconsistent with the command of the warrant.

The mere fact of delay does not necessarily vitiate a search warrant. A number of circumstances, such as distance and weather conditions, may cause a court to consider a warrant to have been executed forthwith, despite some delay,[6] State v. Guthrie, supra; People v. Wiedeman, supra; but delay occasioned merely by the officer's assumption of authority to select the time of execution does vitiate the warrant. Even the magistrate has no right, once he has determined that the conditions for the issuance of a warrant are in existence, to keep the suspect under surveillance and postpone execution of the warrant until such time as it may do the suspect the greatest harm. State v. Perkins, 1926, 220 Mo.App. 349, 285 S.W. 1021. Delay in either issuance or service, "when deliberate and made by the officers for the purpose of selecting their own time and for their own purpose, whether that purpose be to aid the state or the accused, [takes] away from them the power to issue and serve a search warrant." Id., 285 S.W. at page 1024; see also State v. Miller, 1932, 329 Mo. 855, 46 S.W.2d 541.

We hear it said that efficient control of the illicit traffic in drugs requires that the police be allowed discretion in the matter of when they should pounce on the contraband. Similar arguments concerning liquor traffic were thus disposed of in State v. Guthrie, supra, 38 A. at pages 369–370:

"It is urged that the conclusion reached in this case [that a "forthwith" warrant is rendered invalid by an unexplained three-day delay of execution] will materially impair the efficiency of one of the most useful instrumentalities for the enforcement of the liquor statutes. Even if such were the effect, we could not shrink from declaring the law as we believe it to be. But no such effect need be apprehended. No case can be stated in which a needless delay of service will aid the prosecution. Any such case, when stated, will ipso facto show the delay to have been needful, and hence reasonable, and hence remove the case from the purview of this opinion. On the other hand, the more promptly the warrant is served, the more likely the officer is to find the liquors complained of, and the more easy to prove the identity. Every hour's delay, whether from the officer's inefficiency or from his collusion with respondents, endangers the success of the prosecution.

"It is suggested that the prosecution often needs to obtain search warrants in advance, in order to have them in readiness to seize the liquors at the moment of deposit before they can be concealed; that such a procedure is very efficacious, and even essential, to circumvent the cunning of liquor sellers; and that the rule here evolved will nullify it. If such a practice obtains, it should be nullified.

"No prosecution can be lawfully begun, no criminal process lawfully issued, before the offense is committed. The practice suggested, if it obtains, is a scandalous abuse of legal process, based upon the perjury of the complainant,[7] and subjecting

---

6. Although excusable delay in service may not vitiate the warrant, the question whether, by reason of the delay, the property seized is other than that specified in the affidavits upon which the warrant was issued could still be properly raised.

7. Cf. Farmer v. Sellers, 1911, 89 S.C. 492, 72 S.E. 224, 227:
"* * * when the officer has the task of recovering stolen goods or taking contraband liquor from a trained and disciplined criminal, the enemy of society, *it may take weeks of patient observation to ascertain the moment when a search would be of any avail.* In such a case the enforcement of the law might be rendered impossible by a judicial holding that a reasonable time for the execution and return of a warrant is the same as in the case of an ordinary criminal." Emphasis supplied.

all concerned in it to penalties and damages."

Since the warrant in this case commanded the *search* to be made *forthwith,* only the *return* being permitted to be deferred for as much as ten days, the unexplained five-day delay of execution vitiated the warrant and made the search illegal. People v. Fetsko, 1928, 332 Ill. 110, 163 N.E. 359; People v. Wiedeman, 1926, 324 Ill. 66, 154 N.E. 432; McDaniel v. State, 1926, 197 Ind. 179, 150 N.E. 50; State v. Guthrie, 1897, 90 Me. 448, 38 A. 368; State v. Miller, 1932, 329 Mo. 855, 46 S.W.2d 541; Simmons v. State, Okl. Cr.1955, 286 P.2d 296; State v. Pachesa, 1926, 102 W.Va. 607, 135 S.E. 908.

The only authority for the five-day delay of the search pointed to by the Government at the argument is the provision of Rule 41(d), Fed.R.Crim.P.: "The warrant may be executed and returned only within 10 days after its date." Actually this warrant was not issued under that Rule, but rather under D.C.Code, § 33–414,[8] which contains, in subsection (i), the somewhat similar provision: "A search warrant must be executed and returned to the judge or commissioner who issued it within ten days after its date; after the expiration of this time the warrant, unless executed, is void."

The whole tenor of the statute bespeaks immediacy. It authorizes issuance of a search warrant upon a showing under oath that "narcotic drugs *are* manufactured, possessed, * * *," in the described premises. Subsections (a)– (d). Only if the commissioner is satisfied of the *present existence* of the contraband or of probable cause to believe its *present existence* may he issue the warrant. Subsection (e). If he is so satisfied, the commissioner must issue to the officer a warrant "commanding him *forthwith*[9] to search the place named *for the property specified* and to bring it before the * * * commissioner." *Ibid.* Thus, not only the search, but even the return must be commanded to be made forthwith. This is made explicit in subsection (k), providing that "the officer *must forthwith return* the warrant to the * * * commissioner and deliver to him a written inventory of the property taken * * *." Speedy action is required even after the return, for subsection (m) requires the commissioner to file the return "at once" with the clerk of the court, together with the affidavits, the warrant, the inventory, the evidence and the record of his proceedings. Such delay of execution of a search warrant as might result from locked doors is avoided by subsection (g) which authorizes the officer to break in if that proves necessary. The statute does not even brook overnight delay of service in a case like the instant one, where the warrant is issued late in the afternoon, for the 1956 amendment, D.C.Code § 33–414(h) (1951 ed., Supp. VI), requires the commission-

---

It would seem that, if the affidavits upon which the warrant is issued are truthful, the property to be seized is in the place to be searched, so that an immediate search will be successful. As shown in Guthrie, see text, supra, only by assuming the affidavits were perjurious can we suppose that an immediate search might not "be of any avail."

8. Act of June 20, 1938, 52 Stat. 792, ch. 532, § 14, as amended July 24, 1956, 70 Stat. 620, ch. 676, Title III, § 301(k). The face of the warrant does not show the authority under which it was issued. But, since the warrant authorized a night search without the "positive" fact showing which Rule 41 would require, it must have been issued under the amended statute.

9. A warrant failing to command forthwith service in the face of such a statutory provision has been held invalid on the theory that strict conformity with the statute is demanded by the Fourth Amendment. State v. Morley, 1927, 5 N.J.Misc. 987, 139 A. 392, 393, quoting the following language from Gouled v. United States, 1921, 255 U.S. 298, 304, 41 S.Ct. 261, 65 L.Ed. 647:

"It has been repeatedly decided that these amendments [the Fourth and the Fifth] should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly overzealous executive officers."

er to authorize night-time search without demanding a "positive" fact showing.[10]

To read the ten-day provision of subsection (i) as allowing an unexplained ten-day delay of execution of a search warrant is to read out of the statute completely the flat requirement that service be *forthwith* and all of the other foregoing indicia that Congress intended the speediest possible execution of search warrants. As I read the statute, ten days is the maximum allowable delay, even if circumstances make service impossible, but, if earlier service can be made, it must be made as soon as possible after the warrant has been issued.[11] I think this is what the statute clearly and unambiguously directs. If there were any ambiguity resulting from the ten-day provision, I would resolve it in favor of the appellant. Such statutes "are designed to protect the privacy of the citizen, unless the strict standards set for searches and seizures are satisfied." Rea v. United States, 1956, 350 U.S. 214, 218, 76 S.Ct. 292, 294, 100 L.Ed. 233. "The proceeding by search warrant is a drastic one. Its abuse led to the adoption of the Fourth Amendment, and this, together with legislation regulating the process,

should be liberally construed in favor of the individual." Sgro v. United States, 1932, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260.[12]

---

10. Congress was informed that the vast majority of illicit narcotics transactions occur at night and that the time of the transaction is "the only time, or appropriate time" to make the seizure. H.R. Rep. No. 2277, 84th Cong., 2d Sess., 13, 14 (1956).

11. The conclusions I reach as to the statute are equally applicable to search warrants issued under Rule 41, Fed.R. Crim.P.

Benton v. United States, 4 Cir., 1934, 70 F.2d 24, certiorari denied 1934, 292 U.S. 642, 54 S.Ct. 778, 78 L.Ed. 1494; and United States v. Klapholz, D.C.S.D. N.Y.1955, 17 F.R.D. 18, which seem to say that service at any time within the ten-day period is seasonable, involved delays of only one day and two days, respectively, and the opinions are silent as to whether the delays were excusable. Moreover, in neither of those cases did the court appear to consider any part of the statute or the Rule other than the ten-day provision.

12. See also Judge Anderson's opinion in Giles v. United States, 1 Cir., 1922, 284 F. 208, 212:

"The provisions in sections 3–6 [of the Espionage Act, now embodied in Rule 41, Fed.R.Crim.P.] are declaratory of the most carefully guarded previous judicial determinations of the meaning and scope of the Fourth Amendment to the Constitution of the United States, and of similar provisions in state Constitutions. It need hardly be pointed out that a process issuing to an administrative official, which will authorize him at any time of the day or night to enter the home or office of any person, breaking doors, windows and opening by force anything within the premises, for the purpose of taking possession of articles belonging either to the occupant or falling within the category of outlawed property, is a power capable of such oppressive and liberty destroying use that it should be strictly guarded and exercised."