UNITED STATES of America, Appellee,

v.

Jose RAMOS, Defendant-Appellant.

No. 506, Docket 31239.

United States Court of Appeals Second Circuit.

Argued June 14, 1967.

Decided July 12, 1967.

See also 2 Cir., 380 F.2d 713.

Joseph I. Stone, New York City (Stone & Diller, New York City, on the brief), for defendant-appellant.

Elkan Abramowitz, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York; Douglas S. Liebhafsky, Asst. U. S. Atty., on the brief), for appellee.

Before HAYS and FEINBERG, Circuit Judges, and McLEAN, District Judge.*

FEINBERG, Circuit Judge:

Jose Ramos appeals from a conviction under 21 U.S.C. §§ 173, 174 after a non-jury trial in the Southern District of New York before Judge Bryan. A search of appellant's apartment under a warrant had uncovered thirty ounces of heroin. On appeal, Ramos argues that (1) there was no probable cause for the search warrant, (2) Judge Bryan's refusal to

* Of the Southern District of New York, sitting by designation.

call an informer as a witness at the hearing on a pre-trial motion to suppress was error, and (3) the execution of the warrant was improper. For reasons indicated below, we affirm the convictions.

The arguments made by Ramos are to some extent similar to those made by appellant in United States v. Suarez, Docket No. 30883, 2 Cir., 380 F.2d 713. This is not surprising since the same counsel tried both cases and presented both appeals (which were consolidated for argument), and since the legal arguments in part depend upon the identity of key persons in each case. Before considering the issues on appeal, some specification of dates and events will be helpful.

On May 16, 1966, narcotics agent John A. Frost obtained three search warrants from United States Commissioner Earle N. Bishopp. One authorized search of appellant Ramos's apartment at 459 East 135 Street, Bronx, New York; the others allowed a search of two other apartments, one belonging to the appellant in the *Suarez* case, supra. The three affidavits in support of the warrants were substantially similar and were all based in part upon tips from the same allegedly reliable informant. The warrants involving Suarez and appellant Ramos were executed shortly after they were issued. Suarez was indicted and tried first; he was found guilty of violating 21 U.S.C. §§ 173, 174 in August 1966. Appellant Ramos was indicted in the same month; thereafter he moved under Fed.R.Crim.P. 41(e) to suppress the narcotics seized from his apartment. In October 1966, Judge Bryan held an evidentiary hearing on this motion at which five witnesses, including agent Frost, testified. At the close of the hearing, the judge denied the motion. Ramos's trial took place in January 1967 before Judge Bryan sitting without a jury; it was agreed that the record of the pre-trial hearing on the motion to suppress and other stipulated testimony would form the trial record. Judge Bryan found Ramos guilty.

Appellant's first argument here is that there was not probable cause for issuance of the search warrant. Agent Frost's affidavit stated, in part, as follows:

A reliable informant who has provided information on at least 100 prior occasions over the past year and one half, which information has proven extremely reliable and accurate informed your deponent that on May 15, 1966 he was actually present in apartment 4W, 459 E. 135th Street and observed a quantity of heroin, believed to be about two kilograms of heroin. The informant has stated to your deponent that the apartment is rented by Jose R. Ramos a/k/a Joseph Ramos. Your deponent has checked the records of Consolidated Edison Company and has been informed that apartment 4W, 459 E. 135th Street is in fact leased by Joseph Ramos. In addition a review of the files of the Bureau of Narcotics indicates that information has been received in the past that Jose R. Ramos is involved in wholesale narcotic drug traffic. In addition, during surveillance conducted by your deponent Jose R. Ramos was seen in the company of individuals known by your deponent to be involved in narcotic trafficking.

Because the source of information has provided accurate information on so many prior occasions and because of personal surveillance and investigation carried on by your deponent I believe that there is now a quantity of heroin being secreted in the above apartment by Jose R. Ramos.

In Aguilar v. State of Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), the Supreme Court stated the applicable test for such affidavits as follows:

the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d

887, was "credible" or his information "reliable." [Footnote omitted.]

Here, Commissioner Bishopp was told that the informant had been proven extremely accurate by information furnished on many other occasions, that the informant saw heroin in Ramos's apartment, which was named, that a check had been made as to whether Ramos had leased this apartment, that the files of the Bureau of Narcotics disclosed involvement of Ramos in drug traffic, and that surveillance by the affiant showed Ramos in the company of others also known to be so involved. Under *Aguilar*, this was clearly sufficient to establish probable cause. See also United States v. Freeman, 358 F.2d 459 (2d Cir.), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966).

■ In this case, as in *Suarez*, supra, appellant does not really dispute the adequacy of the affidavit on its face; he argues instead that the assertions therein are false. We referred in *Suarez* to the unsettled nature of the law on the right to test by an evidentiary hearing the truth of assertions in an affidavit submitted to obtain a search warrant. See Rugendorf v. United States, 376 U.S. 528, 531–32, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); United States v. Freeman, 358 F.2d at 463 n. 4. It is unnecessary in this case to decide that troublesome issue; whether entitled to it or not, appellant was given such a hearing on his motion to suppress. Indeed, the record there made became the bulk of the trial record. And "[t]he [alleged] factual inaccuracies depended upon by [Ramos] to destroy probable cause," see *Rugendorf*, 376 U.S. at 532, 84 S.Ct. at 828, were justifiably rejected by Judge Bryan. Appellant argued to the judge that the information given by the informant to agent Frost was "so inherently incredible as to show * * * that there was not probable cause." The information so characterized was that the informant called Frost on a Sunday and told him he had seen narcotics in three different New York City apartments, one "about four or five miles away" from the others. According to appellant, time and space limitations made this "inherently incredible"; Judge Bryan rejected that contention, observing that the two Bronx apartments were "practically cheek by jowl," [1] while the third, in lower Manhattan, was just half an hour away by subway. We find no error in that. Appellant also offered to prove that the informer had not been in Ramos's apartment on that Sunday, but apparently this attempt petered out; although Ramos called his common-law wife, her sister, both of whom were living at the apartment, and agent Frost as witnesses, this line of inquiry was largely ignored. In sum, except for the judge's refusal to call the informer to which we now turn, appellant has shown no error in Judge Bryan's finding that the warrant issued on probable cause.

■ At the close of the hearing, Ramos's counsel asked that the informer "be brought in." By this time counsel had been afforded an opportunity to examine agent Frost on the "probable cause" issues, but narrowly confined his inquiry to establishing the informer's identity, function and activity on the Sunday in question. On cross-examination, the Government brought out that Frost considered the informer reliable and why. Ramos's counsel at first offered into the record the prior testimony of the informer in the *Suarez* case (which included lengthy examination by the same counsel), and Judge Bryan said that he would receive it. However, counsel decided to limit the offer to two pages only; this was said to establish that the informer was acting on hearsay when he told agent Frost that there were narcotics in Ramos's apartment. Judge Bryan held that this was irrelevant to whether agent Frost "had reasonable grounds to believe" the informer. On these facts, we hold that Judge Bryan was correct. Of course, the problem of when an informer need be produced as a witness has been considerably discussed

---

1. 475 East 143 Street and 459 East 135 Street, Bronx, N. Y.

of late and is frequently troublesome to resolve. See, e. g., McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); United States v. Tucker, 380 F.2d 206 (2d Cir. June 28, 1967). But this case presents facts that considerably lessen the difficulty. The search was pursuant to a warrant issued by a magistrate; he, not the agents, was the arbiter of probable cause, a factor strongly stressed by even the dissenters in *McCray*, 386 U.S. at 314–16, 87 S.Ct. 1056. The informer's testimony would have related only to the legality of a search revealing evidence, not to the ultimate question of guilt or innocence. See *McCray*, 386 U.S. at 307, 309, 87 S.Ct. 1056. It is true that the informer's identity was known, so that his usefulness had already been impaired. But the argument as applied to these facts works both ways. Because defense counsel had examined the informer in the *Suarez* case, a substantial record attacking the informer's credibility was already available to the court. Moreover, there was substantial other evidence offered in agent Frost's affidavit to justify the warrant, and Frost, who was examined by defense counsel, testified to the reasons for his reliance on the by then identified informant. Finally, the stated purpose of having the informer testify was to show that his statement that Ramos had narcotics was based on hearsay (information from Ramos's own family), but no claim was made that Frost knew that. Under these circumstances, unless there were an unswerving rule that the informer need always be produced on a motion to suppress, Judge Bryan did not abuse his discretion in refusing to delay the close of the hearing. We do not believe that there is such a rule. See *McCray*, 386 U.S. at 312–14, 87 S.Ct. 1056.

■■ Finally, Ramos argues that execution of the warrant was improper under Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Judge Bryan heard the testimony of the agents and other witnesses and expressly accepted the former. If that testimony is credited, Ramos opened the door, the agents announced their authority and purpose, Ramos attempted to slam the door, and they then pushed it open and entered. Hence, the requirements of 18 U.S.C. § 3109 were met. The argument made here is essentially that the testimony of the agents on the manner of entry in this and the *Suarez* case was so improbably similar as to render it unbelievable as a matter of law. We cannot agree. Moreover, although the argument could have been made to Judge Bryan to discredit the agents' version of these disputed facts, it was not. We have reviewed the record and see no adequate reason to disturb Judge Bryan's findings.

Judgment of conviction affirmed.