Fletcher **HOUSE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21389.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 12, 1968.

Decided April 8, 1969.

Mr. Donald L. Herskovitz, Washington, D. C. (appointed by this court) for appellant.

Mr. Roger E. Zuckerman, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Robert K. Webster, Asst. U. S. Attys., were on the brief, for appellee.

Before DANAHER,* McGOWAN and TAMM, Circuit Judges.

DANAHER, Circuit Judge.

After a jury trial, this appellant was convicted of violations of 26 U.S.C. § 4704(a) and 21 U.S.C. § 174, and now, basically, challenges the timeliness of the execution of a search warrant. The Government offered evidence to prove that this appellant possessed 65 capsules of heroin. The defense at trial contended that someone else had possessed the narcotics. The appellant and four others,[1] including two women, were found in a small room.[2] Seeking reversal, the appellant has submitted contentions upon which the courts have repeatedly ruled,[3] and, except as to the denial of a motion to suppress, only general discussion is presently required.

On June 2, 1966, Narcotics Agent Ruhl was stationed near a window of Room 1B located on the first floor at 1010 N Street, N. W. His view into the lighted room was unobstructed. He saw this appellant from inside force open a corner of a screen on that window and then drop a glassine envelope presently found to contain 65 capsules of heroin. Retrieving the contraband, Agent Ruhl and another officer thereupon went to the front door of the premises and thence to Room 1B. There, as Ruhl testified, he again saw the appellant whom he identified by his clothing[4] as the person who had thrust the contraband from the screen.

A pretrial motion to suppress evidential use of the heroin was denied.[5] Testimony offered in behalf of the *appellant* revealed that the only door to Room 1B had been barricaded, for on either side of the frame door were steel hooks into which an iron bar had been inserted. Occupants of the room had been "shooting" narcotics with syringes and needles. Realizing that some one was at the door seeking entrance and suspecting the presence of police in the hallway, there was

---

* Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

1. Three were arrested as narcotics vagrants as defined in D.C.Code § 33–416a (1967).

2. Defense counsel argued to the jury that a fourth person was a "pusher," present "in this dope pad and that is what it was," for some purpose of his own. This individual was not arrested as the officers concluded he was not a narcotics user.

3. For example, he argues that the statutory presumptions are unconstitutional, but "Both statutory provisions under which petitioner was prosecuted permit conviction upon proof of the defendant's possession of narcotics, and in the case of 26 U.S.C. § 4704(a), of the absence of the appropriate stamps. Possession was the basis of the Government's case against petitioner." Jones v. United States, 362 U.S. 257, 258, 80 S.Ct. 725, 729, 4 L.Ed.2d 697 (1960). See Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959).

4. The appellant himself identified a photograph in color which had been taken at headquarters shortly after his arrest. The clothing then shown had been described by the agent in the course of his testimony.

5. An objection at trial to the admissibility of the contraband was rejected as the trial judge stood upon his earlier ruling.

commotion within the room as the occupants moved about. The testimony of the appellant was that the voice outside the door identified the speaker as "Smitty," but to the occupants the voice did not sound like that of "Smitty." Even so, the barrier in a matter of a few minutes was lowered,[6] and officers pushed in the door. None of the occupants would explain which one of their number might have pushed open the screen and dropped the contraband.

The Government's evidence on the other hand, showed that officers had a search warrant which had been issued on May 25, 1966 for Room 1B, and that they went to the premises to execute the warrant on June 2, 1966. Agent Ruhl and another officer had been detailed to watch the window from a point of vantage in the yard. As the officers in the hallway knocked on the door, they identified themselves and their purpose, announcing that they had a warrant to search Room 1B. After waiting for a brief period of time and then hearing a commotion caused by the people within the room, the officers attempted to force the door. Presently entrance to the room was effected.

At the pretrial hearing on the appellant's motion to suppress, his counsel asked an officer:

"Q. Did you make any effort to execute that warrant forthwith?"

As the Government objected, defense counsel explained that he "would want to show that it was not served forthwith"; the trial judge answered:

"The Court: I understand your position, [Mr. Attorney]. You may ask your questions."

We think the judge intended to sustain the objection[7] and apparently counsel so understood, for he dropped the subject.

His questioning thereafter dealt with identification of the accused and with further details concerning the presence of other occupants of the room.

No further effort was made to develop reasons why the warrant was not executed until June 2. Whether the intervening Memorial Day weekend had something to do with it or whether the officers kept the accused under surveillance until they were reasonably sure of his possession of narcotics at the time and place mentioned, or whether the fourth man not arrested was an informant, fall into the realm of interesting possibilities but nevertheless constitute sheer speculation.

Writing for the Court in Sgro v. United States,[8] Chief Justice Hughes said:

"It is in the light of the requirement that probable cause must properly appear when the warrant issues that we must read the provision which in explicit terms makes a warrant void unless executed within ten days after its date. That period marks the permitted duration of the proceeding in which the warrant is issued."

The statute there under consideration expressly declared void a search warrant not executed and returned within ten days after its date. FED.R.CRIM.P. 41 (c) provides that the warrant "shall command the officer to search forthwith the person or place named for the property specified," and Rule 41(d) explicitly provides: "The warrant may be executed and returned only within 10 days after its date."

The ambiguity between the "forthwith" command in Rule 41(c) and the ten day limitation in Rule 41(d) has not squarely been resolved in this circuit, although some mention of the problem has been made from time to time.

---

6. Upon realizing that police—not "Smitty" —might be at the door, one of the occupants lifted the bar above referred to and removed the bar from one of the hooks, whereupon the door was forced open. So ran the version tendered in behalf of the appellant.

7. Defense counsel at trial sought, once again, to raise an issue respecting delay in the execution of the warrant. The Government having objected, the trial judge adhered to his pretrial ruling.

8. 287 U.S. 206, 211, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932).

For example, in Seymour v. United States,[9] this court considered an issue respecting a warrant issued April 6, 1948 which had not been served until April 12 and then commented:

*"In the absence of any showing of prejudice to appellant,* we think there was sufficient compliance with the warrant. 'Forthwith' is here equivalent to '* * * within a reasonable time; promptly and with reasonable dispatch.'"* (Emphasis supplied.)

■ Certainly the outer limits of the period within which the search warrant may validly be executed and returned are delineated in Rule 41(d).[10] And the plain intimation that "forthwith" means something may be perceived from what we said in *Seymour, supra*; reasonableness in point of time under the circumstances may provide the key.[11] It would seem that there is no automatic touchstone, indeed sufficient compliance with the Rule may turn upon a showing of prejudice by the accused as Judge Edgerton observed in *Seymour*.[12]

At this point the record before us is necessarily silent, for the judge cut off inquiry, apparently being of the view that execution of the warrant within ten days met the "forthwith" requirement of Rule 41(c). Yet Sgro v. United States had not so held.[13]

■ Rather, the Supreme Court's opinion related the showing of probable cause set forth in the application for the warrant to a current possession of contraband in the premises to be searched. Implicit in the Court's ultimate holding was a necessity for search reasonably referable to a contemporaneous violation of law. We may so conclude in that the opinion pointed out there was no new evidence of a present violation when it was sought to reactivate the outstanding unserved warrant. Accordingly the search pursuant to the reissued warrant was declared void.

■ There may be various circumstances which will permit delay in execution of a search warrant without contravention of the purpose for which the warrant has been issued, but, perforce, none had been developed here. Moreover no proffer of a showing of prejudice to the appellant had been undertaken in view of the court's ruling. Lacking a record in such respects, we will not undertake final disposition of the case.

Accordingly we remand solely [14] for purposes of inquiry by the trial judge. His supplemental exploration of the circumstances of the delay and of whatever showing the appellant may offer as to possible prejudice may develop a record upon which his determination will be based, with the conviction to stand or fall in accordance with his conclusions.

Remanded.

9. 85 U.S.App.D.C. 366, 177 F.2d 732 (1949).

10. In Mitchell v. United States, 103 U.S. App.D.C. 341, 258 F.2d 435 (1958), a warrant issued on February 12, 1957 had not been executed until February 17, but no objection had been voiced on that account. Sustaining the warrant on other grounds, we commented simply that "forthwith" in Rule 41(c) was to be read as limiting the time of search to ten days after the issuance of the warrant, citing *Sgro, supra.* and Murby v. United States, 2 F.2d 56 (1 Cir. 1924) ; *and see* Benton v. United States, 70 F.2d 24 (4 Cir.), cert. denied, 292 U.S. 642, 54 S.Ct. 778, 78 L.Ed. 1494 (1934). Our observation then dealt, not with a point pressed by the appellant, but with discussion offered by our colleague.

11. *Cf.* Spinelli v. United States, 382 F.2d 871, 885, 886 (8 Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

12. *Supra* note 9.

13. The statute under consideration in Sgro v. United States, *supra* note 8, contained language "commanding [the officer] forthwith to search." 287 U.S. at 209–210 n. 1, 53 S.Ct. at 140, quoting § 6 of the Espionage Act.

14. Discussion of other contentions is unnecessary. Moreover, we have before us none of the issues considered in the cases cited in note 3 *supra*, and Jones v. United States, 113 U.S.App.D.C. 14, 304 F.2d 381 (en banc), cert. denied, 371 U.S. 852, 83 S.Ct. 73, 9 L.Ed.2d 88 (1962).