**UNITED STATES of America, Appellee,**

v.

**Edward DUNNINGS, Appellant.**

**No. 191, Docket 32527.**

United States Court of Appeals Second Circuit.

Argued Oct. 2, 1969.

Decided Nov. 17, 1969.

Certiorari Denied March 23, 1970. See 90 S.Ct. 1149.

---

James D. Zirin, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, John E. Sprizzo, Asst. U. S. Atty., of counsel), for appellee.

Theodore Krieger, New York City, for appellant.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

Executing a search warrant issued by a United States Commissioner, five Federal narcotics agents knocked on the door of Apartment A–1 at 143 West 119th Street in Manhattan leased to one

Brockington. When there was no response except the apparent noise of moving furniture, Agent Raugh broke down the door, which had been heavily secured. Raugh found defendant Dunnings standing less than a foot from a table, with a pile of white powder between his feet. The curtains were drawn, the blinds down and the windows barred. When Raugh asked what the powder was, Dunnings responded "I don't know, but I don't want to get any closer to it."[1] It proved to be 39 grams of heroin hydrochloride. Search pursuant to the warrant disclosed enough more heroin to make a total of 207.9 grams, glassine envelopes, a dilutant, and other implements used in the trade to dilute and package narcotics.

Dunnings was indicted in the District Court for the Southern District of New York for concealing heroin in violation of 21 U.S.C. §§ 173 and 174. A first trial before Judge Tyler and a jury resulted in a disagreement; on a second trial he was convicted and was sentenced as a second offender. The brief and argument of his capable assigned counsel raise no question concerning his guilt or the fairness of his trial, but rather two points relating to the search. One is that the judge denied a request for a hearing with respect to the affidavit on the basis of which the search warrant issued. The other is that although the warrant issued on June 13, 1966, it was not executed until June 22.

Raugh's affidavit seeking the issuance of a search warrant stated his belief that a quantity of heroin was being concealed in Apartment A–1 and set forth the following facts as tending to establish this:

An informant of the Bureau of Narcotics who has previously furnished reliable and accurate information on approximately 20 occasions over the past four years has informed your deponent that the above described premises are presently being occupied by Edward Dunnings a/k/a "Shirts". The informant states that on a number of previous occasions within the past month he has been present with Dunnings in the above described apartment. This informant further states that on June 13, 1966, he had a conversation with Dunnings and Dunnings informed him that he has just returned from out of town. Dunnings further stated to the informant that he had just obtained a quantity of heroin which he was keeping in the above mentioned apartment. Dunnings stated to the informant that he planned to package the heroin this afternoon, that is, the afternoon of June 13, 1966, and that he would be available for business later in the day.

Your deponent has checked the records and files of the Bureau of Narcotics and has determined that Edward Dunnings a/k/a "Shirts" has previously been convicted of violation of the Federal Narcotics Laws on August 8, 1960. In addition, Edward Dunnings a/k/a "Shirts" is mentioned in nine separate recent investigations conducted by agents of the Bureau of Narcotics. Dunnings is alleged to be the source of supply for the Narcotics in most of these investigations.

---

1. Although counsel has not raised the point on appeal, we have considered whether use of this answer violated Dunnings' privilege against self-incrimination as construed by recent rulings of the Supreme Court. We do not think so. Chief Justice Warren's opinion in Miranda v. Arizona, 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966), expressly excepted "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process * * *." We do not regard this as inapplicable here simply because only two citizens, Dunnings and Brockington, were "on-the-scene." See Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476, 478–479 (1968) (Leventhal, J.). Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), concerned questioning not at the scene and time of the crime but in the defendant's bedroom four hours later.

Your deponent has received information from approximately five reliable informants to the effect that Dunning was in fact recently out of town. In addition, two reliable informants have provided information that Dunnings returned from out of town this weekend. All of the above described reliable informants have stated that Edward Dunnings a/k/a "Shirts" is presently engaged in the business of selling heroin.

Before the first trial, counsel for Dunnings moved to suppress, alleging that the affidavit was "insufficient in law to establish probable cause," that it "states no facts sufficient to establish probable cause," and that the warrant "was issued on the basis of an insufficient affidavit for search warrant and solely upon the belief of the affiant who made said affidavit and certain unsupported hearsay." At the beginning of the first trial, Dunnings' counsel requested a hearing with respect to the legality of the search warrant, to which he considered Dunnings entitled even in the absence of any facts discrediting the affidavit. Judge Tyler declined to conduct a hearing and denied the motion to suppress.

■■ When we compare Raugh's affidavit with that in the most demanding Supreme Court decision yet rendered with respect to sufficiency, that of a sharply divided Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), it becomes plain that Dunnings was not entitled to suppression on the ground that the affidavit was insufficient as a matter of law. The informant's "tip" there stated in the most general terms that Spinelli was "operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned the numbers WYdown 4–0029 and WYdown 4–0136," 393 U.S. at 414, 89 S.Ct. at 588—a report which "could easily have been obtained from an offhand remark heard at a neighborhood bar," 393 U.S. at 417, 89 S.Ct. at 589. Here the informant stated with great specificity that he had been present with Dunnings in the apartment on several recent occasions and that Dunnings had reported he had just returned from out of town, had just obtained a quantity of heroin which he was keeping in the apartment and planned to package that afternoon, and would be available for business later. Dunnings' recent absence was corroborated by five and his return by two reliable informants. The requirement of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), that the affidavit set forth the "underlying circumstances" necessary to enable the magistrate to judge of the validity of the informant's conclusion thus was fully met. To be sure there was not the corroboration which the defendant's own acts had provided in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), but, despite *Spinelli's* reference to *Draper* as "a suitable benchmark," 393 U.S. at 416, 89 S.Ct. 584, we do not read *Spinelli* as deciding that such corroboration is vital when, as here, the affidavit reveals how the informant received his information, see *id.* The only criticism that remains is that Raugh did not supply more details why he considered the informant to be reliable, e. g., by saying that the information so furnished had led to convictions. But here the admonition in United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), against reading such affidavits with undue technicality comes into play. An allegation that the informant had "furnished reliable and accurate information on approximately 20 occasions over the past four years" is good enough. Cf. United States v. Perry, 380 F.2d 356, 357 (2 Cir. 1967), cert. denied, 389 U.S. 943, 88 S.Ct. 307, 19 L.Ed.2d 299 (1967); United States v. Ramos, 380 F.2d 717, 719 (2 Cir. 1967).

■ Once the legal sufficiency of the affidavit is recognized, appellant's position necessarily becomes that, even so, a defendant is entitled to a hearing where he can probe whether the averred statements were in fact made to the af-

fiant and whether the instances adduced to prove reliability were significant enough to justify the conclusion. We have intimated that circumstances might arise where a hearing with respect to the truth of a legally sufficient affidavit should be granted. United States v. Freeman, 358 F.2d 459, 463 n. 4 (2 Cir.), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966); United States v. Suarez, 380 F.2d 713, 715–716 (2 Cir. 1967); United States v. Ramos, *supra,* 380 F.2d at 720. But, for reasons well indicated by Judge Frankel in United States v. Halsey, 257 F.Supp. 1002, 1004–1006 (S.D.N.Y.1966), that should be done only when there has been an initial showing of falsehood or other imposition on the magistrate. The interposition of an "independent judicial officer, whose decision, not that of the police, [will] govern whether liberty or privacy is to be invaded," Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), goes a long way toward accomplishing the objectives of the Fourth Amendment. True, the objectives are not accomplished if the judicial officer is put upon by the police. But it is the responsibility of such officers, particularly in light of their new dignity as United States magistrates and the requirements for their membership in the bar and periodic training, 28 U.S. C. §§ 631(b) and 637, to see to it that they are not deceived. The exclusionary rule, as applied in Fourth Amendment cases, is a blunt instrument, conferring an altogether disproportionate reward not so much in the interest of the defendant as in that of society at large. If a choice must be made between a rule requiring a hearing on the truth of the affidavit in every case even though no ground for suspicion has been suggested and another which takes care of the overwhelming bulk of the cases, the policies of the Fourth Amendment will be adequately served by the latter even though a rare false affidavit may occasionally slip by.

Appellant's second point is this: F.R. Cr.P. 41(c) directs that a search warrant "shall command the officer to search forthwith the person or place named for the property specified," and the warrant here did just that. But Rule 41(d) says that "The warrant may be executed and returned only within 10 days after its date" and the form of search warrant contained in the Appendix to the Rules of Criminal Procedure, Form 15, does not use the "forthwith" language. Here the warrant was issued on June 13, 1966, but was not executed until June 22. At the first trial Agent Raugh explained the delay on the ground that his information was that Dunnings was using the apartment only as a plant, to repackage the heroin. He thus could not be "positive that the stuff was there unless Dunnings was there." Being unable to verify Dunnings' presence on the evening of June 13 after the search warrant was issued, Raugh instituted surveillance of the premises and waited to execute the warrant until the evening of June 22 when he received information that Dunnings was at the apartment. Another relevant consideration doubtless was that if the warrant had been executed when Dunnings was not in the apartment, he might very likely have fled.

Raugh's testimony that the heroin "may or may not" have been in the apartment when Dunnings was not there does not indicate doubt that probable cause existed either when he made the affidavit or when he made the search but rather that he doubted his ability to execute the warrant as directed except when he knew that Dunnings was present. Under these circumstances we see nothing wrong with his waiting to execute the warrant until he determined that Dunnings had returned and he believed that the facts stated in the affidavit again obtained, assuming that all this occurred within ten days. To permit agents to make the judgment that the averments of the affidavit are again satisfied, after a period of doubt, does not undercut the policy requiring an independent judicial determination of the existence of probable cause. The commissioner had already concluded that the

facts recited in the affidavit were sufficient to establish probable cause. The determination that the facts on June 22 corresponded to the facts stated in the June 13 affidavit is one which the agents would have made even if they had returned to the commissioner to bring the affidavit up to date—with the likelihood that the delay incident to such a return might again make the execution of the warrant dubious. There is nothing to suggest that the heroin found on June 22 was not part of the same lot reasonably believed to have been on the premises on June 13. We thus find that the warrant was executed as soon as was reasonably possible, and since this occurred within 10 days of issuance, there was no violation of Rule 41. Contrast Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

■ Even if we were to think that the sole reason for the delay was to effectuate Dunnings' arrest, it would not follow that the search was invalid. It is by no means clear that the "forthwith" phrase in Rule 41(c) is a determination of an important policy rather than a belated echo of a medieval royal command.[2] If the agents had obtained an arrest warrant for Dunnings, they would have had a reasonable time within which to execute it.[3] United States v. Joines, 258 F.2d 471 (3 Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). We fail to see why, when they obtained a search warrant, they were obliged to execute it in a manner that might well have prevented Dunnings' arrest, so long as they did execute it within 10 days and at a

time when the probable cause recited in the affidavit continued. See Mitchell v. United States, 103 U.S.App.D.C. 341, 258 F.2d 435 (1958), but see Spinelli v. United States, 382 F.2d 871, 885 (8 Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and House v. United States, 411 F.2d 725 (D.C.Cir. 1969).[4]

■ The court has received a letter from Mr. Dunnings which it has treated as a supplemental brief. The only point calling for comment is his assertion that he did not receive the effective assistance of counsel in the proceeding that led to his earlier conviction. No such claim was made below and the record sheds no light upon it.

Affirmed.

J. JOSEPH SMITH, Circuit Judge (concurring in the result):

I agree that the warrant was properly issued here. The only matter which gives me concern is the failure to obey the command that it be executed "forthwith." Orders for the invasion of homes should not be loosely construed. See Judge Bazelon's concurring opinion in Mitchell v. United States, 103 U.S.App.D.C. 341, 258 F.2d 435 (1958). However, in the absence of any apparent prejudice here from the nine day delay (as the opinion points out, there is nothing to indicate that the heroin seized was not that which was there on June 13), I concur in the affirmance of the conviction. Cf. House v. United States, 411 F.2d 725 (D.C. Cir.1969).

2. "*Sine dilatione*" and "*sine mora*" were frequently used in various writs as early as the 12th century. For examples see Royal Writs in England from the Conquest to Glanvil, Selden Society, Vol. 77, Nos. 108, 111, 114, 116, 117, 118, 119, 121, 122, 123, 124, 155, 156, 158, 198. The Act of June 15, 1917, § 6, 40 Stat. 228 (1917), which was the source of Rule 41, appears to be the first federal statute containing this language. For earlier statutes without the "forthwith" see Act of Mar. 2, 1799, § 68, 1 Stat. 678; Act of July 13, 1866, § 15, 14 Stat. 152; Act of Oct. 3, 1913, § IV(G) (3), 38 Stat. 195.

3. We recognize that F.R.Cr.P. 4, dealing with arrest warrants, does not use the "forthwith" phrase.

4. We realize that a number of state decisions cited in Judge Bazelon's concurring opinion in *Mitchell* appear to take a stricter view.