334 F.Supp. 546 (1971)
UNITED STATES of America,
v.
Richard BECKER et al., Defendants.
No. 71 Cr. 733.
United States District Court, S. D. New York.
November 29, 1971.
*547 Whitney North Seymour, Jr., U. S. Atty., for S. D. N. Y., New York City, for the United States; Milton J. Carp, Special Atty., Dept. of Justice, of counsel.
Herald Price Fahringer, Buffalo, N. Y., for defendants Richard Becker and Jack Eisen.
Vincent W. Lanna, Yonkers, N. Y., for defendant Eli Kazan.
Robert Mitchell, New York City, for defendant Carmine Moscatiello.
Maurice Brill, New York City, for defendant Anthony Natelli.
*548 William Esbitt, New York City, for defendant Jack Silver.
Richard Rosenkrantz, Brooklyn, N. Y., for defendant Michael Sacks.

OPINION
EDWARD WEINFELD, District Judge.
The defendants, indicted for violation of section 1955 of Title 18, United States Code (illegal gambling business), and of the conspiracy statute, section 371 of Title 18, United States Code, move to suppress all evidence derived as a result of a wiretap order issued on May 11, 1971, by a Judge of this Court, under the relevant provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968,[1] the government having given notice to the defendants that it intends to introduce such evidence upon their trial.[2] The suppression is sought upon a claim that the statute is unconstitutional on its face and as applied under the First, Fourth and Fifth Amendments of the United States Constitution. Alternatively, the defendants move, if the statute is upheld, to suppress all evidence obtained by interception on the ground that the order was invalid in that it failed to comply with the statute and that the affidavit upon which it was granted failed to establish probable cause.
The constitutionality of the electronic surveillance authorization provisions of Title III has been upheld by at least five federal district courts and by one Court of Appeals, to date.[3] To these decisions, which considered various claims levelled against the constitutionality of the Act, there is little to add. The provisions of Title III authorizing electronic interception of oral conversations were structured to contain the protective safeguards and procedures delineated in Berger v. New York,[4] Katz v. United States,[5] and also commented upon in Osborn v. United States.[6] While this legislative effort to avoid constitutional infirmity by following the guidelines enunciated by the Supreme Court by itself gives no assurance of success, there is the added fact that the Act does carry with it the presumption of constitutionality.[7] While the Supreme Court has not as yet rendered a definitive ruling on the various objections advanced against the constitutionality of the Act, it has been noticed by the Court and at least inferentially has received the Court's approval. Thus, in Alderman v. United States,[8] the facts of which preceded enactment of the statute and involved claims of unlawful electronic interference, the Court observed:
"[W]e are mindful that there is now a comprehensive statute making unauthorized electronic surveillance a serious *549 crime. The general rule under the statute is that official eavesdropping and wiretapping are permitted only with probable cause and a warrant. Without experience showing the contrary, we should not assume that this new statute will be cavalierly disregarded or will not be enforced against transgressors."
Upon consideration of the various objections advanced by the defendants, the Court holds that Title III upon its face is not unconstitutional.
The defendants next contend that the order authorizing the wire interception was invalid and that there was no showing of probable cause sufficient to warrant the order. They contend, among other matters, it is defective because it contains no specific time during which the tap can be maintained. The telephones here involved were private lines, and the affidavit submitted in support of the order established that they were regularly used in an extremely active gambling enterprise. It is a matter of common knowledge that the activities of such an enterprisethe receiving and dispensing of information and wagers in regard to various types of sporting events, such as horse racing, boxing, baseball, hockey, football, which take place at either coast of the continent and points in between and at different hours of the day and nightare not limited to such specific hours that an interception order can, as a practical matter, define precisely and limit the period during which interception can be conducted. As the Supreme Court observed: "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract."[9] Moreover, the fact that nighttime interceptions were not excluded under the order is of no relevance here, aside from the fact that nighttime activity could be expected in a gambling enterprise of the magnitude described in the affidavit, which alleged instances of bets as high as $100,000 on each of two football games. While a "somewhat higher" standard of probable cause traditionally has been required in cases of night searches for tangible evidence because of "the peculiar abrasiveness of official intrusions at such periods,"[10] this factor has no application unless there are circumstances where the conscience would be shocked were an intrusion to occur, for example, where the occupants of a residence are awakened from sleep or other invasions of peculiarly sensitive aspects of privacy occur. Clearly these prospects are absent where the evidence submitted indicates that the wiretaps are employed involving premises, the telephones of which are used to carry on gambling activities. Upon the facts here presented, the inference was warranted that the premises to which the phones were listed were not in fact residential, but were used exclusively to further an illegal enterprise of vast scope.
Defendants' other objections to the affidavits on the basis of which the order was issued are equally without merit. The judge who issued the order was called upon, as "a neutral and detached magistrate,"[11] to "assess independently the probability"[12] that the facts were as alleged in the affidavits. Accordingly, we begin with the proposition that the fact that the issuing judge found probable cause is itself a substantial factor tending to uphold the validity of the order so issued.[13] That the affiant did not allege that the unnamed informants *550 directly and personally supplied information to the affiant is not relevant to the central issue whether, under the totality of all the circumstances presented, hearsay information is sufficiently credible and reliable to amount to probable cause.[14] Here the defendants' assertion that "there is absolutely no basis for crediting the information received by the informants from unknown individuals" completely disregards the fact that the government's affidavit states that each of the three informants referred to therein stated he personally had used the telephone number in question to place bets with the bookmaking operation or to discuss gambling matters. Further, the information so received was corroborated when another authorized interception in the Eastern District of New York revealed gambling calls made to one of the telephone numbers previously supplied by two of the informants who subsequently advised government authorities that the gambling enterprise had moved and was using the telephone numbers to which the order refers. Also, physical surveillance confirmed that the persons who the informants described as participants in the bookmaking ring entered and left the building in which the telephones in question were installed.
Finally, the reliability of the informants who had previously furnished information concerning gambling activities and other criminal matters which resulted in arrests and convictions had been amply established and met the test of Spinelli v. United States.[15] These facts form ample basis upon which the judge to whom the application for a warrant was made could reasonably find that probable cause existed.
United States v. Pearce,[16] on which defendants rely, is not apposite. There the only basis stated in the affidavit for crediting the informant was the bald assertion that he had "in the past . . . provided reliable." Here the affidavit on which the order was issued was neither vague nor conclusory; it was reasonably specific and included direct knowledge on the part of the informants as to certain specified activities.
The requirement that the agents seeking the order have reason to credit the statements of the informers was satisfied in view of the facts that (1) the information they furnished in the past resulted in arrests and convictions and at no time had the sources been known to furnish false information;[17] (2) the information given by the respective informants in the instant situation was consistent, cumulative and mutually corroborative;[18] and (3) the information was independently corroborated by surveillance conducted by government *551 agents.[19] These facts fully justify the Court in deciding that each of the informants was a trustworthy and reliable source of information. This is not a doubtful or marginal case. The affidavits here presented fully satisfy the constitutional requirements of probable cause.
The motion to suppress the wiretap evidence seized pursuant to the order is denied.
NOTES
[1] §§ 2510-2520 of Title 18 of the United States Code, as amended by the Organized Crime Control Act of 1970, Pub.L.No. 91-452, 84 Stat. 922.
[2] 18 U.S.C. § 2518(9).
[3] Cox v. United States, 449 F.2d 679 (10th Cir., Oct. 13, 1971); United States v. Perillo, 333 F.Supp. 914 (D.Del.1971); United States v. Cantor, 328 F.Supp. 561, 568-569 (E.D.Pa.1971); United States v. Sklaroff, 323 F.Supp. 296, 304-308 (S.D.Fla.1971); United States v. Escandar, 319 F.Supp. 295, 297-302 (S.D.Fla. 1970), appeal dismissed for lack of jurisdiction sub nom. United States v. Dudley, 427 F.2d 1140 (5th Cir. 1970); United States v. Tantillo, Docket No. 1912-69 (D.D.C., Sept. 21, 1970) (without opinion).
[4] 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).
[5] 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
[6] 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966).
[7] Cf. McGowan v. Maryland, 366 U.S. 420, 425-426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
[8] 394 U.S. 165, 175, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969). Justice Fortas, however, specifically noted in his opinion, concurring in part and dissenting in part, that although he referred to relevant provisions of the Act, he had not considered its constitutionality, and he expressed neither agreement nor disagreement "with the majority's statements concerning the Act." Id. at 208 n. 10, 89 S.Ct. at 985.
[9] United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).
[10] United States v. Ravich, 421 F.2d 1196, 1201 (2d Cir.), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970).
[11] Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed.2d 436 (1948).
[12] Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1957).
[13] United States v. Ramirez, 279 F.2d 712, 716 (2d Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960).
[14] United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Archuleta, 446 F.2d 518 (9th Cir. 1971); United States v. Shipstead, 433 F.2d 368, 372 (9th Cir. 1970); United States v. Bridges, 419 F.2d 963, 965 (8th Cir. 1969); Gallagher v. United States, 406 F.2d 102 (8th Cir.), cert. denied, 395 U.S. 968, 89 S.Ct. 2117, 23 L.Ed.2d 756 (1969); United States v. Pascente, 387 F.2d 923 (7th Cir. 1967), cert. denied, 390 U.S. 1005, 88 S.Ct. 1248, 20 L.Ed.2d 105 (1968).
[15] 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). See also United States v. Shipstead, 433 F.2d 368 (9th Cir. 1970); United States v. Dunnings, 425 F.2d 836 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970).
[16] 275 F.2d 318 (7th Cir. 1960).
[17] See United States v. Mendoza, 433 F.2d 891, 894-895 (5th Cir. 1970), cert. denied, 401 U.S. 943, 91 S.Ct. 953, 28 L. Ed.2d 225 (1971); United States v. Berkus, 428 F.2d 1148 (8th Cir. 1970); United States v. Dunnings, 425 F.2d 836 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970); United States v. Ramos, 380 F. 2d 717 (2d Cir. 1967).
[18] See United States v. Alonzo, 447 F.2d 126 (2d Cir. 1971); United States v. Chin Dan Fook, 413 F.2d 1016 (2d Cir. 1969), cert. denied, 397 U.S. 928, 90 S. Ct. 936, 25 L.Ed.2d 107 (1970).
[19] See United States v. Alonzo, 447 F.2d 126 (2d Cir. 1971); United States v. Gardner, 436 F.2d 381 (2d Cir. 1971).