**UNITED STATES of America**

v.

**Murrell BEDFORD, Appellant.**

No. 74–2119.

United States Court of Appeals, Third Circuit.

Argued March 6, 1975.

Decided June 30, 1975.

As Amended July 15, 1975.

---

Byrd R. Brown, Pittsburgh, Pa., for appellant.

James J. West, Richard L. Thornburgh, Charles F. Scarlata, U. S. Attys., Pittsburgh, Pa., for appellee.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

We are confronted in this case with the issue of the admissibility in a federal prosecution of evidence seized under the authority of a state search warrant, executed by city and federal law enforcement officers eight days after its issuance, despite the provision in the warrant to search defendant's residence "forthwith."

The district court held the warrant was stale when executed, and accordingly granted a motion to suppress evidence with respect to narcotics seized in the search of defendant's own apartment. However, the court also held that the

three ounces of heroin found in a trash area located on the ground floor of the apartment house were abandoned, and thus denied the motion in this respect. The jury found the defendant guilty of possession based upon the evidence seized from the trash area, and this appeal followed.

## I

The challenged search warrant was issued by a police magistrate to Detective Joseph Joiner of the Pittsburgh Police Bureau on August 27, 1973. Predicated on a probable violation of state narcotics laws, the warrant authorized the search of "1723 Fifth Avenue. Residence of Myrel [sic] Bedford and Mary Bedford (Mary Hughes)," and, in pre-printed form, provided that Detective Joiner was to conduct the search of the premises "forthwith."

Eight days later, on September 4, 1973, Detective Joiner executed the warrant. He attributed the delay to his having been off duty for a few days during the intervening 3-day Labor Day weekend and for another day or so as a result of illness. After these periods of absence, he decided to wait for additional information as to when "the bulk of the narcotics" would be in defendant's apartment. On the day of the search, the same informant whose earlier information had been used in establishing probable cause for issuance of the warrant, notified the police that the defendant was still in possession of narcotics. Soon thereafter Joiner executed the warrant. He was accompanied by seven other city police officers and four special agents of the Federal Drug Enforcement Administration. The special agents had been asked by Joiner, on the day of the search, to assist the local police officers in the execution of the warrant.

The Bedford residence was one of two apartments located on the top floor of a three-story, four-unit apartment house. Prior to searching the premises the officers executing the warrant established a surveillance of the immediate surrounding area and observed Bedford leave the building and drive away. Bedford was followed and stopped by some of the officers and taken back to the apartment house.

Upon arrival, Joiner notified Mary Hughes, who had been looking out of a third-floor window, that they had a warrant to search her apartment and asked her to open the outer door of the apartment building which was secured by a buzzer/lock system. She agreed, and about five minutes later appeared at the door and admitted the officers into the building. Most of the officers proceeded upstairs to search the Bedford-Hughes apartment, where a large quantity of heroin was seized.

One of the federal officers, Special Agent Maffett, remained on the ground floor to secure the entranceway. While there, Maffett was approached by a tenant of the building and asked to place a trash bag in the trash area located in the common hallway behind the stairwell on the ground floor. With the tenant's permission, Maffett inspected this bag and found it contained refuse. He then deposited the bag in the trash area, where he examined other bags already left there. Search of the area and the bags resulted in the discovery by Maffett of three ounces of heroin and narcotics packaging paraphernalia.

The seized items were taken by the Pittsburgh police officers to be examined by local authorities for the purpose of establishing their contraband nature. Bedford was subsequently indicted by a state grand jury, but a pretrial motion to suppress was granted, and, inasmuch as the Commonwealth had no further evidence to present, an order was entered adjudicating him not guilty. Indictment by a federal grand jury followed, charging Bedford with a violation of the federal narcotics laws. *See* 21 U.S.C. § 841(a)(1).

## II

When a warrant's validity is being examined for *federal* prosecutory purposes and the resulting search is "state" in character, the warrant need

only satisfy federal constitutional requirements[1] rather than those of state law, which may involve stricter standards. Thus, even if the warrant did not comply with *state* law, evidence obtained from a subsequent search and seizure would not necessarily be inadmissible in a federal criminal trial. The test is whether the fourth amendment's imperatives have been observed.[2]

### (a) Particularity of the Warrant

Although neither party raised the issue of the warrant's particularity, we deem it necessary to comment briefly on this point since a state court previously held the warrant to be constitutionally defective for its failure adequately to specify the place to be searched.

 While it is not entirely clear whether the state court relied on federal or state law as authority for its holding, we are not, in any event, bound by its decision.[3] "In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960).

 Consonant with the fourth amendment's dictate that warrants particularly describe the place to be searched, a search warrant directed

---

1. Whether a search conducted pursuant to a state warrant is characterized, in a federal prosecution, as "federal" or "state" depends upon the extent federal officers were involved in the search and seizure. Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927). Each case will turn upon its own particular facts, but something more than "mere participation" by federal officers must be found before a state search is transformed into a federal undertaking. *Id.* at 32, 47 S.Ct. 248.

If the search is deemed "federal in character," the legality of the search would be conditioned upon a finding that the warrant satisfied federal constitutional requirements *and* certain provisions of Fed.R.Crim.P. 41 "designed to protect the integrity of the federal courts or to govern the conduct of federal officers." United States v. Sellers, 483 F.2d 37, 43 (5th Cir. 1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974). On the other hand, if the search is held to have been a "state" undertaking with minimal federal involvement, the warrant, assuming proper issuance under state law, need only conform to federal constitutional requirements. *See, e. g.,* United States v. Johnson, 451 F.2d 1321, 1322 (4th Cir. 1971), *cert. denied,* 405 U.S. 1018, 92 S.Ct. 1298, 31 L.Ed.2d 480 (1972); United States v. Coronna, 420 F.2d 1091, 1092, n.2 (5th Cir. 1970); United States v. Cotham, 363 F.Supp. 851, 855 (W.D.Tex.1973) United States v. Grosso, 225 F.Supp. 161 (W.D.Pa. 1964).

An argument can be made that the search was "federal" in character, but we are more inclined to view the search as a "state" undertaking in which federal agents participated solely to supply additional manpower for the execution of the warrant. A number of facts support this position: (1) the warrant was issued under state law and directed to state officers; (2) the warrant was predicated on probable violation of state narcotics laws; (3) there was no evidence of bad faith on the part of either the state or federal officers; (4) federal agents did not assist in the obtaining of the warrant; (5) there was no evidence that federal agents instigated or supervised the search; (6) defendant was initially arrested by local police officers; (7) the majority of the evidence was found by local officers; and (8) the products of the search, placed in the custody of local police, formed the basis of a state prosecution.

2. *See* United States v. Scolnick, 392 F.2d 320, 325–26 (3d Cir.), *cert. denied,* 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). *See also* Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); United States v. Armocida, 515 F.2d 49 (3d Cir., 1975).

3. It is a recognized principle that a federal court is not bound by a state court's interpretation of federal laws or of a state statute under misapprehension of federal law. Furthermore, a state court may not impose greater restrictions, as a matter of *federal* constitutional law, on police activity with respect to search and seizures than the United States Supreme Court holds to be necessary, although it may interpret a feature of *state* constitutional law more restrictively than the Supreme Court has interpreted an equivalent provision of the Federal Constitution. Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

against an apartment house will usually be held invalid if it fails to describe the particular apartment to be searched with sufficient definiteness to preclude a search of other units located in the building and occupied by innocent persons.[4] However, "it is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States No. 1,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). "The standard . . is one of practical accuracy rather than technical nicety." *United States v. Gomez,* 42 F.R.D. 347 (S.D.N.Y.1967). Accordingly, a warrant has been considered valid if it specifies the name of the occupant of the apartment against which it is directed, despite the absence of any physical description of the particular apartment.[5]

The warrant at hand fits this exception to the general rule, and therefore is valid under federal constitutional standards.[6] It specified that the place to be searched was the "Residence of Myrel [sic] Bedford" located at "1723 Fifth Ave. being a 3 story brick dwelling." Thus, reasonably construing the warrant, the search of the building was restricted to defendant's residence.[7]

## (b) Staleness of the Warrant

The element of time can admittedly affect the validity of a search warrant.[8] Since it is upon allegation of presently existing facts that a warrant is issued, it is essential that it be executed promptly, "in order to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated."[9] If the police were allowed to execute the warrant at leisure, the safeguard of judicial control over the search which the fourth amendment is intended to accomplish would be eviscerated. Thus, a search pursuant to a "stale" warrant is invalid.

It is generally accepted, however, that a warrant need only be executed within a *reasonable* time after its issuance, notwithstanding the presence of "forthwith" language in the warrant.[10] Timeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was per se reasonable or unreasonable. Rather it should be functionally measured in terms of whether probable cause still existed at the time the warrant was executed.[11] "Only a probability of criminal activity is

4. *See, e. g.,* United States v. Higgins, 428 F.2d 232 (7th Cir. 1970).

5. *See, e. g.,* Moore v. United States, 149 U.S. App.D.C. 150, 461 F.2d 1236, 1238 (1972); United States v. Hinton, 219 F.2d 324, 326 (7th Cir. 1955); United States v. Barkouskas, 38 F.2d 837, 838 (M.D.Pa.1930).

6. Whether the warrant is invalid under state standards for lack of specificity we need not consider. Apparently though, the state court judge, in granting Bedford's motion to suppress evidence, was at least partially relying on an adequate and independent non-federal ground. *See* Commonwealth v. Copertino, 209 Pa.Super. 63, 224 A.2d 228 (1966).

7. Although the scope of the warrant did not extend to a search of the trash area, if the police were lawfully inside the apartment building, they could search and seize items specified in the warrant and found in common areas of the building. *Cf.* United States v. Blake, 484 F.2d 50 (8th Cir. 1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974).

8. United States ex rel. Beal v. Skaff, 418 F.2d 430, 433 (7th Cir. 1969).

9. United States v. Nepstead, 424 F.2d 269, 271 (9th Cir.), *cert. denied,* 400 U.S. 848, 91 S.Ct. 50, 27 L.Ed.2d 86 (1970).

10. *See, e. g.,* United States v. Wilson, 491 F.2d 724 (6th Cir. 1974), and cases cited therein. These cases involved "federal" searches and application of Rule 41(c) of the Federal Rules of Criminal Procedure before it was amended, which required that searches be conducted "forthwith." The courts eventually construed this directive in terms of reasonableness, mainly in an attempt to reconcile it with Rule 41(d) which specified that a warrant may be executed only within 10 days after its issuance.

11. *Cf.* Sgro v. United States, 287 U.S. 206, 211, 53 S.Ct. 138, 77 L.Ed. 260 (1932). The dissent rejects the application of the continuing probable cause test to the facts of this case since it views the "forthwith" language as a purposeful, "judicial command that the warrant be served immediately." However, the fact that

necessary for there to be probable cause," *United States v. Gimelstob*, 475 F.2d 157, 160 (3d Cir.), *cert. denied*, 414 U.S. 828, 94 S.Ct. 49, 38 L.Ed.2d 62 (1973), and since the record reveals that there was continuing probable cause on the day of the search, execution of the warrant was reasonable.[12]

■ The district court below held that under either federal or state[13] law the warrant was invalid because of an unreasonable delay in its execution. As a basis for holding the warrant stale under federal law, the district court noted the lack of any reasonable cause for the delay and also indicated that under Rule 41(c) of the Federal Rules of Criminal Procedure[14] the execution of the warrant was improper. The court apparently did not consider whether there had been continuing probable cause as measured by *federal* constitutional law, which we believe is the appropriate inquiry under the facts presented.

In a number of cases involving prosecutions for federal narcotics offenses, courts have found that the initial probable cause which supported the issuance

of the warrant continued to exist at the time of the search, despite a delay in execution of the warrant.[15] Under such circumstances, the element of judicial control is not undermined by delay, for as Judge Friendly has stated:

> To permit agents to make the judgment that the averments of the affidavit are again satisfied, after a period of doubt, does not undercut the policy requiring an independent judicial determination of the existence of probable cause. The commissioner had already concluded that the facts recited in the affidavit were sufficient to establish probable cause. The determination that the facts on June 22 corresponded to the facts stated in the June 13 affidavit is one which the agents would have made even if they had returned to the commissioner to bring the affidavit up to date . . . . There is nothing to suggest that the heroin found on June 22 was not part of the same lot reasonably believed to have been on the premises on June 13. We thus find that the warrant was executed as soon as was reasonably possible . . . .[16]

the word "forthwith" is found in the pre-printed text of the state search warrant form is not dispositive of our consideration of the validity of the warrant and the legality of the search for *federal* prosecutorial purposes. For even though evidence may have been obtained unlawfully under state standards, it may be admissible in a federal prosecution if all federal standards are met. *See* note 2 *supra*.

12. In United States ex rel. Beal v. Skaff, *supra* note 8, the court assessed the reasonableness of a *state* search conducted under authority of a state warrant, which commanded the police to search the premises "forthwith," in terms of whether probable cause still existed at the time of execution. The court found there was continuing probable cause and that, therefore, the warrant and its execution were not violative of the Federal Constitution.

13. State law is neither controlling nor even applicable here. *See* notes 1 and 2 *supra*.

14. Inasmuch as we find the search to have been "state" in character, *see* note 1 *supra*, the validity of the warrant does not depend upon compliance with the Federal Rules of Criminal Procedure. But *even if* Rule 41(c) did apply, the warrant would not be invalid thereunder. The district court seems to have

discounted, in effect, the 1972 amendment of Rule 41(c), which eliminated the requirement that searches be performed "forthwith," and now requires only that the search be conducted within a specified period of time, not exceeding 10 days. While the warrant's failure to specify a period of time for execution may, to a certain extent, dilute judicial control over the search and vest additional discretion in the executing officers, such failure would not by itself necessarily nullify a warrant if it is executed within 10 days and at a time when probable cause continues to exist. *Cf.* note 15 *infra* and accompanying test.

15. *See* United States v. Wilson, *supra* note 10, at 725 (six-day delay); United States v. Rael, 467 F.2d 333, 336 (10th Cir. 1972), *cert. denied*, 410 U.S. 956, 93 S.Ct. 1429, 35 L.Ed.2d 690 (1973) (five-day delay); United States v. Nepstead, *supra* note 9, at 271 (six-day delay); United States v. Dunnings, 425 F.2d 836, 840–41 (2d Cir. 1969), *cert. denied*, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970) (nine-day delay).

16. United States v. Dunnings, *supra* note 15, at 840–41.

In the case before us, there was nothing, other than the passage of the eight days during the period between the issuance and execution of the warrant, which altered the facts upon which the original affidavit was based and which gave the police probable cause to believe that the contraband specified in the warrant was in defendant's apartment. Inasmuch as there was continuing probable cause at the time the search was conducted, the warrant was not unreasonably executed, and the defendant was not prejudiced by the delay.[17]

Since the warrant was validly executed, the search which followed was also valid and the conviction is therefore affirmed.[18]

ROSENN, Circuit Judge (dissenting):

I believe this is a classic case for the application of the exclusionary rule if that rule is to continue to have any vitality. Despite the command of a city magistrate to execute "forthwith" the search warrant in this important case, the police dawdled for eight days without, as the district court found, credible explanation for the delay. The majority nonetheless hold that the search warrant was not stale because the police believed that the facts recited in the affidavit for the warrant continued to exist at the time the warrant was executed. I respectfully dissent.

### I.

I agree with the majority that, even if the police violated state law in executing the warrant, the narcotics seized in the instant search were admissible if the search complied with federal constitutional standards. *See United States v. Scolnick*, 392 F.2d 320, 325–26 (3d Cir.), *cert. denied*, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). The principal federal constitutional standards applicable here are contained in the fourth amendment. It requires that, absent exigent circumstances,[1] a judicial officer determine in advance whether probable cause exists for a search. *Vale v. Louisiana*, 399 U.S. 30, 34–35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

Probable cause is a time-oriented concept, a condition which does not continue indefinitely. Thus a judicial ruling, if made, by the issuing authority concerning the duration of probable cause is as important to the warrant requirement as a ruling that probable cause exists at the time a warrant is issued. A search conducted after the expiration of probable cause is no more lawful than one for which probable cause never existed. Transgression of a judicially determined time limit for execution of a warrant therefore is as much a violation of the fourth amendment as a warrantless search absent exigent circumstances.

In the present case, the city magistrate mandated that the search be made

17. Even if the delay were held to be unreasonable, the evidence seized would not be inadmissible unless the defendant could "point to some definite legal prejudice attributable to this unjustified delay." Spinelli v. United States, 382 F.2d 871, 886 (8th Cir. 1967), *rev'd on other grounds*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See also* United States v. Cafero, 473 F.2d 489 (3d Cir. 1973), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974). "[I]f a prompt search would have disclosed nothing incriminating, and if during an unreasonable delay period the defendant brings incriminating evidence into or onto the premises which is seized as a result of the delayed search, the defendant has sustained legal prejudice." United States v. McClard, 333 F.Supp. 158, 166 (E.D.Ark.1971), *aff'd*, 462 F.2d 488 (8th Cir.), *cert.denied*, 409 U.S. 988,

93 S.Ct. 345, 34 L.Ed.2d 255 (1972). On the record here, there is no basis for concluding that the contraband would not have been found if a search of the premises had been promptly conducted after issuance of the warrant.

18. Because we dispose of this appeal on the ground that the warrant was not stale, it is unnecessary for us to consider the issues of abandonment, standing, and the effect of the police officers' entry into the apartment building under color of a search warrant held to have been invalid by the district court.

1. The Government does not contend that exigent circumstances prevented the police from applying for a new warrant on September 4.

"forthwith." Such a judicial requirement "controls the officer who executes the warrant." *Mitchell v. United States,* 103 U.S.App.D.C. 341, 258 F.2d 435, 437 (1958) (Bazelon, J., concurring). The majority all but characterize this judicial order as "boiler plate" since the word "forthwith" was printed on the warrant. I doubt that crucial language in a search warrant may be disregarded because it is printed, especially in what essentially is a three-sentence document.

For the proposition that the judicial command "forthwith" effectively may be discounted, the majority apparently rely on a line of federal cases which attempted to reconcile the "forthwith" requirement of rule 41(c) of the *Federal Rules of Criminal Procedure,* since eliminated by amendment,[2] with the ten-day limit imposed by rule 41(d). *See, e. g., United States v. Wilson,* 491 F.2d 724 (6th Cir. 1974). This reconcilation resulted in some dilution of the term "forthwith." Another line of cases, however, construed unamended rule 41 in a manner which preserved the "forthwith" requirement more or less intact. These cases held that a search must be made "forthwith," *i. e.,* with reasonable diligence, and in no event more than ten days after the warrant is issued. *See United States v. Bradley,* 428 F.2d 1013, 1015–16 (5th Cir. 1970); *House v. United States,* 134 U.S.App.D.C. 10, 411 F.2d 725, 728 (1969), *cert. denied,* 399 U.S. 915, 90 S.Ct. 2220, 26 L.Ed.2d 574 (1970); *Spinelli v. United States,* 382 F.2d 871, 885–86 (8th Cir. 1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Mitchell v. United States, supra,* 258 F.2d at 437 (Bazelon, J., concurring). Of course, the comparative stringency of these interpretations of the term "forthwith" is of little relevance here since both the "forthwith" and the "ten-day" requirements of unamended rule 41, not being of constitutional dimension, are inapplicable to the warrant in the present case.

Since the "forthwith" time limit was contained in a state warrant form and was approved by a city magistrate, I believe whatever legal gloss is to be superimposed upon the ordinary meaning of the term "forthwith" ought to be imported from Pennsylvania law. Although state law is not directly applicable in determining the validity of the warrant at the time of execution, the terms of the warrant must be interpreted in the legal context in which they were employed by the magistrate. I unfortunately have been unable to find any Pennsylvania appellate decision, statute or court rule defining the term "forthwith." I note, however, that the relevant Pennsylvania rule of criminal procedure, adopted shortly after the search in this case, requires that all search warrants be executed within two days of issuance. *See* Pa.R.Crim.P. 2005(d), 19 P.S. Appendix. I also note that decisions in other states, unaffected by the ten-day limit imposed by rule 41(d), have construed the term "forthwith" in a manner requiring diligence upon the part of the executing authorities. *See, e. g., People v. Fetsko,* 332 Ill. 110, 163 N.E. 359, 360 (1928); *People v. Wiedeman,* 324 Ill. 66, 154 N.E. 432 (1926); *State v. Guthrie,* 90 Me. 448, 38 A. 368 (1897); *State v. Miller,* 329 Mo. 855, 46 S.W.2d 541, 542 (1932). As the court stated in *Miller, supra.*

> [n]o discretion is conferred upon such officer to hold the warrant until such time as he may choose to serve it, and certainly none to withhold its execution until such time as *in his judgment* the execution thereof may produce results more satisfactory either to him or to the state, thus making himself the judge of the existence of probable cause for the search at the time it is made.

46 S.W.2d at 542 (citation omitted).

The command "forthwith" of course cannot be translated into a precise number of hours or days. As Judge Bazelon has indicated in the context of unamended rule 41, the term has some "circumstantial elasticity." *Mitchell v. United States, supra,* 258 F.2d at 437 (Bazelon,

2. Order, 56 F.R.D. 143 (U.S. Supreme Court, April 24, 1972).

J., concurring). Nonetheless, an inadequately explained delay of eight days, as the unexplained delay of five days in *Mitchell,* "is inconsistent with the command of the warrant." *Id.* at 438 (Bazelon, J., concurring); *see Spinelli v. United States, supra,* 382 F.2d at 885–86.

The only evidence offered to excuse the failure to execute the search warrant "forthwith" was Detective Joiner's testimony at the suppression hearing that he was ill or on leave during part of the period of delay. The accuracy of this testimony was drawn seriously into question on cross-examination. Consequently, the district court, describing Joiner's testimony as "somewhat vague," found that "reasonable diligence was not exercised, and undue delay occurred in the execution of the search warrant." Although the district court may have applied the incorrect legal standard, I cannot join the majority in discounting this finding of fact since it definitely is not clearly erroneous.

The majority apparently adopted the standard of reasonableness set forth in *United States v. Dunnings,* 425 F.2d 836 (2d Cir. 1969), *cert. denied,* 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970). As I read that case, the Second Circuit held that (1) if a "forthwith" federal search warrant is executed within ten days of issuance, and (2) if the police determine that the facts obtaining at the time of the search correspond to those recited in the affidavit for the warrant, and (3) if subsequent court proceedings fail to show that the items seized were not at least in part the items believed to be on the premises when the warrant was issued, suppression is not required under rule 41. 425 F.2d at 844–45. In the present case, of course, neither the "forthwith" nor the "ten-day" requirement of unamended rule 41 applies.[3] However, even in the context of rule 41 prior to the amendment to subsection (c),

I cannot accept the broad standard propounded in *Dunnings.*

As the Eighth Circuit held in *Spinelli, supra,* a federal warrant issued under rule 41:

is executed "forthwith" if it is executed within a reasonable time after its issuance, not exceeding ten days. What is a "reasonable time" must be determined by the individual circumstances of each case.

A warrant is issued upon allegation of presently existing facts, and as such does not allow execution at the leisure of the police, nor does it invest the police officers with the discretion to execute the warrant at any time within ten days believed by them to be the most advantageous. Mitchell v. United States, 103 U.S.App.D.C. 341, 258 F.2d 435 (1958) (concurring opinion).

A warrant is a court order requiring the police to perform a ministerial function. They must be allowed certain leeway in the performance of this duty, but likewise they must be required to diligently perform according to the court's command. A lapse of up to ten days may be reasonable when the delay is caused by distance, traffic conditions, weather, inability to locate the person or premises to be searched, personal safety, etc. However, a delay of a few hours may be unreasonable if the police are not diligent in executing the warrant and the purpose of the delay was to prejudice the rights of a suspect.

382 F.2d at 885.

The *Dunnings* rule, in contrast to the standard articulated in *Spinelli,* presupposes the failure of the police to execute the warrant "forthwith." The rule serves only to validate searches conducted after a delay which is not attributable to difficulties in executing the warrant. Under this rule,[4] the police are not under

---

**3.** Since a state warrant such as the one in the present case is not governed by rule 41, application of the *Dunnings* rule logically could permit execution more than ten days after issuance. There would be no outside time limitation on execution.

**4.** My research reveals that only a decision in the Ninth Circuit has embraced the *Dunnings* rule unequivocally. *United States v. Nepstead,* 424 F.2d 269, 271 (9th Cir.), *cert. denied,* 400 U.S. 848, 91 S.Ct. 50, 27 L.Ed.2d 86 (1970). I note, however, that a decision in the Fifth Cir-

any duty to execute a warrant before the tenth day as long as they determine that the affidavit for the warrant accurately represents the facts existing when the search is made. This determination, however, must be based upon new information such as a fresh tip from an informant. Unless the police are required to resubmit the question of probable cause to a magistrate, this new information will not be recorded until after the search, perhaps not until the date of trial. Moreover, at the time the new information is received, the facts contained in the affidavit may be too remote in time to support issuance of a second warrant, even in light of the new information. I must conclude, therefore, that the *Dunnings* rule permits the police to usurp the function of an impartial magistrate.

Even under the broad standard of *Dunnings*, the warrant in the present case was stale. The police, unlike the situation in *Dunnings*, did not determine before executing the warrant that the allegations of the affidavit continued to obtain. On the contrary, the informant did not relate any information to Detective Joiner on September 4 concerning the heroin believed to be on the premises on August 27 when the warrant issued. According to Detective Joiner, "[m]y informant merely said that it is another shipment."

Clearly the police may not use a warrant rendered stale by the passage of time to sustain a search for an entirely different shipment of narcotics. *Dunnings*, however broadly interpreted, does not stand for this proposition.

## II.

Because I believe the warrant was invalid when executed, I must discuss certain of defendant's contentions not reached by the majority. Defendant was convicted for possession of only the narcotics seized from the common hallway. Thus, if the police could have

gained access to the common hallway without a warrant, these narcotics were admissible and defendant's conviction must be affirmed.

I believe the tenants of defendant's apartment building had a reasonable expectation of privacy with respect to their common areas. Access to their four-unit building was restricted by a buzzer-lock system on the front entrance. The rear entrance was secured by a locked door, a metal gate, and at least three large watchdogs. These precautions unmistakably indicated that only persons admitted by a tenant were permitted to enter. Moreover, they acted as an effective barrier to unauthorized entry. I therefore cannot characterize the tenants' expectation of privacy as anything but reasonable. *See Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *id.* at 360, 88 S.Ct. 507 (Harlan, J., concurring).

The officers gained entry to the common hallway under color of the search warrant. If the warrant was invalid, as I believe it was, any consent to this intrusion by Mary Hughes was vitiated. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). No other tenant consented to the officers' presence. Thus Special Agent Maffett's search of the common hallway constituted a violation of the rights accorded each and every tenant under the fourth amendment.

The district court nevertheless held that defendant lacked standing to assert fourth amendment rights because the narcotics found in the common hallway "might well be classified as abandoned goods." I need not express an opinion concerning whether defendant could have abandoned goods in an area in which he had a reasonable expectation of privacy, for the search was of the area, not only of the goods. For purposes of standing under rule 41(e) of the *Federal Rules of Criminal Procedure*,[5] defendant

---

cuit also may have adopted the *Dunnings* rule. *United States v. Harper*, 450 F.2d 1032, 1044 (5th Cir. 1971).

**5.** Rule 41(e) specifies the procedure by which a person may regain possession of illegally seized property. Because subdivision (e) does

was a "person aggrieved" by the search which unlawfully invaded his reasonable expectation of privacy. Moreover, because defendant was charged with possession of narcotics, he, without more, was a "person aggrieved." *See Jones v. United States*, 362 U.S. 257, 263–64, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Fields*, 458 F.2d 1194, 1196 (3d Cir. 1972).

I believe we must reverse the judgment and sentence of the district court.

not contain standards for determining the validity of a warrant but merely provides a procedure whereby the legality of a search may be challenged, it applies to controversies in federal court concerning state warrants executed primarily by state officers.