UNITED STATES of America

v.

BUSK, James W., a/k/a Buski James W. Busk, Appellant.

UNITED STATES of America

v.

James W. BUSK, Appellant.

Nos. 82–1101, 82–1144.

United States Court of Appeals, Third Circuit.

Argued Sept. 16, 1982.

Decided Nov. 16, 1982.

Stanford Shmukler (argued), Philadelphia, Pa., for appellant; Stanton M. Lacks, Philadelphia, Pa., of counsel.

Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Gerard P. Egan, Asst. U.S. Atty., Taylor Aspinwall (argued), Sp. Asst. U.S. Atty., Philadelphia, Pa., for appellee.

---

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

James W. Busk is before us on separate appeals from judgments of sentence entered following two convictions. One conviction, No. 82–1101, is on four counts of an eight count indictment for willfully attempting to evade payment of the excise tax on wages and the special occupational tax on wagering activity. 26 U.S.C. § 7201 (1976). The other, No. 82–1144, is for conducting an illegal gambling enterprise. 18 U.S.C. §§ 1955 and 2 (1976). Busk's principal contention, common to both appeals, is that both trial courts erred in denying his motion to suppress the fruits of a search of an apartment at 3123 Richmond Street, Philadelphia, Pa., conducted on February 20, 1981, as well as materials seized from his person when he was detained before and during that search. The search was made pursuant to a warrant which, Busk contends, did not, as required by the fourth amendment, particularly describe the place to be searched. His detention, he contends, was an illegal arrest within the meaning of *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). We conclude that the search warrant was invalid. Thus we reverse and remand for a new trial.

In both cases the courts held suppression hearings. Each hearing dealt with the circumstances surrounding the issuance of a search warrant by a judge of the Philadelphia Municipal Court, and the execution of that warrant. The affidavit presented to the municipal court was by a Philadelphia police officer, Anthony P. Massaro. It disclosed that, as a result of a tip from an informant, premises at 3123 Richmond Street were placed under police surveillance on February 17, 18, and 19; that Busk was seen on each day entering the location and

staying approximately one hour; and that a telephone surveillance was conducted between the hours of 11:30 a.m. and 2:00 p.m. on each day, during which hours the phone was continually busy.[1] The affidavit is set forth on a form, on the bottom of which is printed the search warrant. The form contains a printed legend:

PROBABLE CAUSE BELIEF IS BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES

The probable cause information is typed, following the legend, in the space provided. There is no description, in that typed information, of the premises to be searched. Elsewhere on the form is a space containing the printed legend:

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSONS TO BE SEARCHED (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.)

The printed warrant directs a search of "the above described premises or person." Thus the language typed in the space provided under this printed legend sets forth the scope of the executing officer's authority. That language is:

3123 Richmond St., 3-story brick row home, (entire property to be searched.)

Another space on the printed form contains the printed legend:

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (If proper name is unknown, give alias and/or description)

Typed in this space is "James Busk 44 W/M."

Testimony in a suppression hearing establishes that the 3100 block of Richmond Street comprises three-story attached row houses, each with a single front entrance, some of which are multiple dwellings. A photograph of the entrance to No. 3123 establishes that it is a multiple dwelling building, for outside the door there are three plainly visible separate door bells. The door leads to a common hall and stair-

---

1. The affidavit also disclosed that the unnamed informant had been in the location on February 13 and 14 and had seen Busk taking numbers bets over the telephone. Busk challenges the sufficiency of the affidavit with respect to the informant's reliability. Because we conclude that the warrant was defective, we do not reach this issue.

well, and there is a separate apartment on each floor. Officer Massaro testified that prior to obtaining the warrant the Philadelphia police had obtained information from gas and electric company records that an apartment on the second floor of 3123 Richmond Street was occupied by someone named Herron. Investigations and surveillance had shown the police that Herron was an associate of Busk. Busk's name was not on the mailbox or door bell. Herron's name is not mentioned in the probable cause affidavit or anywhere in the warrant. Officer Massaro testified that "like I say, investigation by Organized Crime and checks with the utilities and all, I assumed it was the second floor." (N.T. Nov. 2, 1981 at 55). When asked why he did not specify the second floor, he answered:

> Well, I felt that different people—I felt that maybe it wasn't the second floor—I mean for all I know, it could have been the entire property.

(N.T. Nov. 2, 1981 at 57). Thus there is no question that Massaro intended to obtain and did obtain a warrant which would permit a search of the entire multiple dwelling building. Moreover there is no question but that the information obtained from the informant and other sources related to possible gambling activity in a single apartment in that building.

Massaro and at least six other officers set out to execute the warrant on February 20, 1981 prior to 6:00 p.m. As they arrived in the 3100 block of Richmond Street, Massaro observed Busk leaving No. 3123. He ran after Busk, caught him, and showed him the warrant. He frisked Busk, relieving him of $16,000 and a set of keys. Busk was directed to accompany the officers, who went in error to a multiple dwelling at No. 3119 Richmond Street. They gained entrance to an apartment on the second floor, telling the occupant they had a search warrant. The second floor apartment was searched for a half hour. Next they gained entrance to a third floor apartment after telling the occupant they had a search warrant. That apartment was searched for an hour. Busk testified that he was strip searched in the second floor apartment.

Finally the police realized they were in the wrong building and went to No. 3123. They proceeded to the second floor. The apartment door had a window, through which they saw two telephones. Using Busk's keys they entered, and seized gambling paraphernalia.[2]

Both district judges denied Busk's suppression motions, holding that as a matter of law the warrant satisfied the requirement of the fourth amendment that the warrant describe particularly the place to be searched. Both relied, in so ruling, on our decision in *United States v. Bedford,* 519 F.2d 650 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). That reliance was in this instance misplaced. In *Bedford,* citing with approval *United States v. Higgins,* 428 F.2d 232 (7th Cir.1970), we acknowledged the general rule that "a search warrant directed against an apartment house will usually be held invalid if it fails to describe the particular apartment to be searched with sufficient definiteness to preclude a search of other units located in the building and occupied by innocent persons." *Id.* at 654–55. The warrant in *Bedford* directed a search of "1723 Fifth Avenue. Residence of Myrel [sic] Bedford and Mary Bedford (Mary Hughes)." *Id.* at 653. We held that reasonably construed the specific reference to the residence of Myrel and Mary Bedford restricted the authority of the officers executing the warrant to the single apartment occupied by them in the multiple dwelling at the Fifth Avenue address. So construed the warrant satisfied the standard of *Steele v. United States No. 1,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925), that the description be such that the executing officer can with reasonable effort identify the precise place intended.

---

**2.** Charges against Busk in the Pennsylvania state court were dismissed, apparently because the warrant is invalid under Pennsylvania law.

The warrant in this case differs from that in *Bedford* in several important respects. First, it unequivocally directs that the entire property be searched. That direction is in the very section of a printed form intended to contain the description of the place to be searched. The government urges that the reference in another part of the form to James Busk restricts the direction to a specific apartment. It does not, for in contrast with the description in *Bedford* of a residence of the Bedfords, the warrant does not tell the officer whether Busk is the owner or possessor of the entire building, or the occupier of a single apartment. Plainly Officer Massaro sought, and obtained, a warrant which authorized entry into all the apartments in the building if he should deem that necessary. The conduct of the officers in using the warrant to gain entrance to the multiple dwelling house at No. 3119 shows unequivocally that they so understood their authority. A warrant authorizing entry into all apartments in a multiple dwelling house when probable cause has been shown for the search of only one of them does not satisfy the particularity requirement of the fourth amendment. *United States v. Higgins,* 428 F.2d 232 (7th Cir.1970); *United States v. Hinton,* 219 F.2d 324 (7th Cir.1955); *United States v. Parmenter,* 531 F.Supp. 975 (D.Mass.1982).

Because the warrant was invalid, both courts should have suppressed the evidence obtained by searching the apartment. This holding requires a new trial, therefore it is not necessary to address Busk's alternative ground for suppression, that the evidence used at his trial was obtained as a result of an illegal arrest within the meaning of *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

The judgments appealed from will be reversed and the cases remanded for the entry of suppression orders in accordance with this opinion, and for new trials.