849 F.2d 604
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mary BOOTH; Clarice Bowser; Shirley Whittaker, Plaintiffs-Appellees,
v.
Larry A. ANTILL, Defendant-Appellant,
and
Nash County Sheriff's Department; Frank D. Brown; M.M.
Drier; Joe Brantley; W.F.Evans; John-Doe,
defendants who are presently unknown, Defendants.
 No. 87-2038.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 2, 1988.
Decided: June 6, 1988.
 
 Samuel Fraley Bost (William A. Blancato; Womble, Carlyle, Sandridge & Rice, on brief), for appellant.
 Irving L. Joyner, North Carolina Central University (Milton Fitch; Fitch, Butterfield & Wynn, on brief), for appellees.
 Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Mary Booth, Clarice Bowser, and Shirley Whitaker complained that a search conducted under the supervision of deputy sheriff Larry A. Antill pursuant to a warrant issued on the basis of his affidavit violated their constitutional rights. The jury returned a verdict in favor of Antill and several other deputies who had also participated in the search. The district court, however, held that Antill should have known that the affidavit he submitted was insufficient, and therefore he could not reasonably rely on the warrant. It entered a judgment notwithstanding the verdict against Antill alone, and ordered a new trial on the issue of damages. The court's ruling denied Antill's claim of qualified immunity, and he brought this interlocutory appeal pursuant to Mitchell v. Forsyth, 472 U.S. 511 (1985). Because we find that Antill's conduct entitled him to qualified immunity, we reverse the entry of judgment notwithstanding the verdict and remand for entry of judgment on the verdict.
 
 
 2
 * This controversy arises out of a search on authority of a warrant that named Ernest Mitchell as owner of the premises. The tract of land in question is a clearing in the woods in a rural area in North Carolina. On the property were a frame house, a pink and white trailer, a black and white trailer, a cabin, and a camper. The facts taken most favorably for Antill, as they must be for purposes of reviewing a judgment notwithstanding the verdict, are as follows.
 
 
 3
 On September 5, 1984, officers apprehended David Ogburn on Mitchell's property and charged him with attempting to break into a residence in the county. The station wagon he was seen driving at the scene of the crime had license tags issued to Mitchell. Ogburn stated he bought items of personal property found in the vehicle from two men. He said Mitchell also bought things from the men without paying much. Ogburn was released on bond on September 6. In the meantime the officers identified the articles seen in the station wagon as having been stolen recently from another residence, and they obtained a felony warrant charging Ogburn with possession of stolen goods. Other items stolen at the same time were not in the station wagon, and Antill believed these were probably on Mitchell's property.
 
 
 4
 On September 7, 1984, Antill went to Mitchell's property to serve the felony warrant on Ogburn, who he believed might be found there. He was confronted by Mitchell, Booth, Bowser, and Whitaker. Mitchell said that the property was his and that Antill could not enter it without a warrant. When Antill asked if he could search the frame house if Booth consented, Mitchell said "that's not Mary Booth's house, that's my house, everything out here is mine." None of the women disputed or corrected this statement.
 
 
 5
 Antill had gone to Mitchell's property twice before the incidents giving rise to this litigation. In 1983 he went there in the course of a murder investigation. Mitchell on that occasion invited him into the black and white trailer and informed him that the trailer and the property belonged to him. In the summer of 1984, Antill visited the property in response to a report that Booth was being held there against her will. On this occasion Mitchell first refused to let Antill see Booth but finally went to the frame house and told her to come out. She told Antill that she wanted to leave but that Mitchell "would not let her get her children out of his house." Mitchell affirmed that it was his house, and forbid Antill to enter it. Antill had also seen a deed that conveyed the property to Mitchell.
 
 
 6
 Because of Mitchell's assertion of ownership and control made in the presence of the women, to which they took no exception, and on the basis of his prior knowledge about the property, Antill believed the property and all of its buildings and trailers belonged to Mitchell and were under his control. On September 8, Antill named Mitchell as the owner of the property in his affidavit for a search warrant. He designated the places to be searched as a frame house, pink and white trailer, black and white trailer, cabin, and all other outbuildings on the property. The affidavit did not mention the women. The warrant authorized a search for Ogburn and stolen property.
 
 
 7
 Upon arrival at the property, Antill read the warrant to Mitchell and the women. None of them protested. When, however, Antill and the deputies who accompanied him began the search, Booth asserted that she rented and resided in the frame house; Bowser claimed to own and reside in the pink and white trailer; and Whitaker claimed to own and reside in the black and white trailer. Each of the women denied entry to the respective buildings they claimed. Confronted by the conflicting claims of ownership and control asserted by Mitchell and the women, Antill decided to execute the warrant authorizing him to search all the buildings and the trailers.
 
 
 8
 With respect to the charge that Antill unlawfully searched the residences claimed by the women, the court instructed the jury as follows:
 
 
 9
 If you find by a preponderance of the evidence that Mary Booth, Clarice Bowser, Shirley Whitaker and their families were in actual and exclusive possession of the three houses that were searched by the defendants and that no one else was in possession of those houses, then as such, the police officers could not search either of these houses without a valid search warrant that specifically authorizes the officers to invade the privacy of these plaintiffs, if they had exclusive possession of these dwellings. Merely describing the features of a home in a search warrant does not authorize the invasion of privacy of persons who possess those homes. The entry into a home to conduct a search or to make an arrest is unreasonable and illegal under the fourth amendment unless it is done pursuant to a valid search warrant.
 
 
 10
 To be valid, a search warrant must be supported by a legally sufficient reason that points to the possessors of the premises as being in possession of some contraband or evidence. Search warrants to search the premises occupied by one person does not grant authority to search houses occupied by other citizens. A warrant to search an owner's property does not give authority to search property that is rented or leased to someone else. If you find by a preponderance of the evidence that the homes of the plaintiffs were searched by the defendants without a valid search warrant, then you must return a verdict in the plaintiffs' favor. If you do not so find, then you must return a verdict in favor of the defendants.
 
 
 11
 After explaining Antill's obligation not to misrepresent facts when he applied for the search warrant, the district court gave the following instruction:
 
 
 12
 If you find that deputy Antill did not intentionally or recklessly misrepresent the facts in his search warrant application, then you can find that these officers--or that he was properly acting under the search warrant at the time of the search. If you find that he did intentionally or recklessly misrepresent some facts in his warrant application and that the remaining facts set forth in the application did not establish probable cause, you must answer--or you would then determine that the search warrant was improper.
 
 
 13
 The jury returned a special verdict finding that Antill did not violate the women's fourth amendment rights.
 
 
 14
 In its opinion setting aside the verdict, the district court wrote:
 
 
 15
 Antill had previously visited the property of Ernest Mitchell. He was familiar with the three women, and it is not disputed that he knew that the plaintiffs lived in the structures which his warrant application blandly described as "property of Ernest Mitchell." Where multiple residential units exist on a single piece of property, it is necessary for the warrant application to state probable cause to search each unit. United States v. Whitten, 706 F.2d 1000 (9th Cir.1983), cert. denied 465 U.S. 1100, 104 S.Ct. 1593 (1984). This court finds this case to be closely analogous to searches of several apartments in the same building. In such a situation, the rule is unambiguous. A warrant directed against an apartment house will be held invalid if it fails to describe with sufficient definiteness the specific apartment to be searched. United States of America v. Bedford, 519 F.2d 650, 654-655 (3rd Cir.1975), cert. denied 424 U.S. 917 (1976); United States v. Higgins, 428 F.2d 232, 235 (7th Cir.1970). The assertion of Ernest Mitchell that the property was all his, relied on so heavily by Antill in his defense, has little relevance. A warrant to search the entire property of a given landlord does not empower a law enforcement officer to search any residential unit on that property; even if the landlord "owns" the property, his tenants retain their rights to Fourth Amendment protection. It is clear that the warrant must state the units to be searched, even if the landlord has a right to enter those units. Compare Chapman v. United States, 365 U.S. 610 (1961).
 
 
 16
 The court granted the women's motion for judgment notwithstanding the verdict, entered judgment in their favor against Antill, and ordered a new trial on the issue of damages.
 
 II
 
 17
 Usually a trial court should decide the question of qualified immunity before it reaches the merits of the dispute. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). But here the question is presented after a jury has found historical facts pertinent to the inquiry. Therefore, we must apply the standard for deciding a motion for judgment notwithstanding the verdict. Neither the trial court nor the appellate court is
 
 
 18
 free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. Instead it must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence.
 
 
 19
 9 Wright & Miller, Federal Practice and Procedure Secs. 2524 and 2536. Strict adherence to this standard is particularly appropriate because of conflicting claims and information about the exclusive possession of the dwellings that were described in the affidavit and warrant as Mitchell's property.
 
 
 20
 Antill is immune unless his actions violated clearly established law of which a reasonable person would have known. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Harlow, 457 U.S. at 818 (1982). A deputy sheriff is obliged to know that the law forbids him to search a dwelling without probable cause. Therefore, in the context of this case, immunity depends on "whether a reasonably well-trained officer in [Antill's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Malley v. Briggs, 475 U.S. 335, 345 (1986).
 
 
 21
 We cannot accept the district court's observation that this case is "closely analogous to searches of several apartments in the same building." The cases dealing with apartment searches on which the district court relied are readily distinguished. There was ample evidence from which the jury might conclude that living arrangements on Mitchell's property were considerably more ambiguous than those in an apartment building. Mitchell's repeated and uncontradicted assertions made in the presence of the women that he owned and controlled "everything" on the property were authenticated by the way he at various times invited Deputy Antill into the black and white trailer, forbid him to enter the frame house, and forbid him to enter the property at all. This suggests actual control far beyond that exercised by ordinary landlords.
 
 
 22
 The district court considered it undisputed that Antill knew that the women lived in the various buildings they claimed to rent or own. Antill, however, disputes that he knew about their living arrangements when he applied for the warrant. Even if Antill knew this, that fact would not be decisive. There is no requirement that a warrant name all residents of every structure to be searched. Rather, a warrant must list each living unit to be searched, and must establish cause with respect to each. As the Ninth Circuit has in our view correctly observed, "a warrant may authorize a search of an entire street address while reciting probable cause as to only a portion of the premises, if they are occupied in common rather than individually ... if the defendant was in control of the whole premises, or if the entire premises are suspect." United States v. Whitten, 706 F.2d 1000, 1008 (9th Cir.1983). The warrant procured by Antill did list each unit to be searched. The jury could have found from the evidence that the various premises were occupied semicommunally, with Mitchell exercising at least concurrent control over all the units.
 
 
 23
 Anderson v. Creighton, 107 S.Ct. 3034 (1987), which was decided five months after the district court denied Antill qualified immunity, explains principles that govern this case. Anderson reaffirmed that a police officer's subjective intent is not relevant to the inquiry concerning immunity. The proper test is whether a reasonable officer could have believed the search to be lawful "in light of clearly established law and the information the searching officer possessed." 107 S.Ct. at 3011. The Court recognized that it is inevitable that officers will sometimes reasonably but mistakenly conclude that probable cause exists. In those instances the officer "should not be held personally liable." 107 S.Ct. at 3039.
 
 
 24
 Unfortunately the district court did not have the benefit of Anderson's explanation, for the principles of that case exonerate Antill from personal liability. Antill properly followed clearly established law. After Mitchell refused him permission to search the buildings on the property, Antill applied for a search warrant. He had probable cause to believe Ogburn, who had just been released on bail, was on the property for he had recently apprehended him there. A felony warrant had been issued for Ogburn's arrest based on the fact that stolen property was found in the station wagon he had been driving. Ogburn had said he purchased the property from two unknown men. Antill knew other items stolen at the same time were missing and, according to Ogburn, Mitchell had bought property at a cheap price from the same men. Antill also knew Ogburn was using license tags issued to Mitchell. Therefore, Antill had probable cause to believe that other items of stolen property were secreted on the premises Mitchell claimed to own and control. The only mistake attributed to him in procuring the warrant was omission of the women's names in his affidavit. But this omission was caused by his reliance on Mitchell's repeated assertion of ownership and control of all the property. The jury found, on the basis of this and other evidence, that the warrant was valid and that Antill did not violate the women's fourth amendment rights at any stage of the disputed search.
 
 
 25
 In view of the jury's findings of historical fact that were essential to its verdict, we have no trouble holding that a reasonable officer in Antill's position could believe the warrant was valid in light of clearly established law and the information Antill possessed, the standard required by Anderson, 107 S.Ct. 3039-40.
 
 III
 
 26
 In its memorandum opinion the district court offered as an alternative ground for its holding that Antill knew or should reasonably have known that the search as conducted exceeded the scope of his warrant, even if that warrant were valid. But as this claim was not raised by the women in their motion for a directed verdict, it was not before the court for purposes of the motion for judgment notwithstanding the verdict and could not provide a basis for that judgment. Federal Rules of Civil Procedure 50(a) and (b); 9 Wright & Miller, Federal Practice and Procedure Sec. 2537, p. 598.
 
 
 27
 Antill is entitled to qualified immunity. The judgment notwithstanding the verdict is reversed, and the case is remanded for entry of judgment on the verdict of the jury.