**UNITED STATES of America**

v.

**BUSK, James W., Appellant.**

**No. 83–1391.**

United States Court of Appeals, Third Circuit.

Argued Jan. 26, 1984.

Decided March 22, 1984.

Rehearing and Rehearing In Banc Denied April 16, 1984.

Stanford Shmukler (argued), Edward Reif, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of

Appeals, Edward F. Borden, Jr. (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS and BECKER, Circuit Judges, and DUMBAULD, District Judge.*

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

James W. Busk appeals from a judgment of sentence imposed following his conviction by a jury of conducting an illegal lottery in violation of 18 U.S.C. § 1955 (1982). He contends that the court erred in denying his motion to dismiss the indictment. He also contends that the court erred in denying his motion to suppress evidence comprising or obtained from return information within the meaning of the Internal Revenue Code. We affirm.

### I.

### The Motion To Dismiss the Indictment

Busk was tried and convicted of violating 18 U.S.C. § 1955 once before. Because that conviction was based upon illegally obtained evidence which should have been suppressed, this court reversed the conviction and remanded for a new trial. *United States v. Busk*, 693 F.2d 28 (3d Cir.1982).

Following that remand Busk moved to dismiss the indictment on the ground that it was obtained by use, before the grand jury, of evidence which this court held should have been suppressed. The trial court denied the motion to quash. We hold that this ruling was correct.

■ It is established that the exclusionary rule with respect to evidence obtained in violation of the fourth amendment is inapplicable to grand jury proceedings, at least prior to the time a suppression order has been entered. *United States v. Calandra*, 414 U.S. 338, 342–55, 94 S.Ct. 613, 617–618, 38 L.Ed.2d 561 (1974). *See also Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (inadequate

or incompetent evidence before grand jury is no ground for quashing indictment); *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) (use of evidence before grand jury obtained in violation of privilege against self incrimination is not ground for quashing indictment).

■ Relying on *United States v. Serubo*, 604 F.2d 807, 814–19 (3d Cir.1979), Busk urges that use of illegally obtained evidence before a grand jury is a form of prosecutorial misconduct which warrants the sanction of dismissal of the indictment. In *Serubo* we held that such a sanction is an appropriate exercise of our supervisory authority over the misconduct of prosecutors appearing before federal grand juries with the intent to improperly prejudice the grand jurors against a defendant. *Id.* at 818–19. *United States v. Calandra*, *supra*, holds that the mere use of illegally obtained evidence does not so unduly prejudice grand jurors as to warrant dismissal. 414 U.S. at 353–55, 94 S.Ct. at 622–623. If, following the grant of a suppression motion, a federal prosecutor were to present the same evidence to a grand jury, the application of the *Serubo* supervisory power rule might well be appropriate. But where, as here, the illegally obtained evidence is presented to the grand jury long before any suppression motion is made, that rule has no application. Thus the trial court did not err in denying Busk's motion to quash the indictment.

### II.

### The Motion to Suppress Evidence

### A. Busk's Theory

Busk's motion to suppress evidence comprising or obtained from return information within the meaning of the Internal Revenue Code presents an issue of first impression for this court. The motion was predicated on the confidentiality and disclosure provisions of sections 4424 and 6103

---

* Hon. Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation.

of that Code. See 26 U.S.C. § 4424 (1976); 26 U.S.C. § 6103 (1976 & Supp. V 1981). Section 6103 deals with confidentiality of returns and return information generally. It provides that, except as expressly authorized by Title 26, no person who has had access to tax returns or return information shall disclose such information in any manner. 26 U.S.C. § 6103(a). Return information is defined broadly to include all data received by the Internal Revenue Service with respect to the possible liability of a taxpayer for penalty, tax, fine, interest, forfeiture or offense.[1] Its disclosure is expressly authorized by sections 6103(c) through (o). Of the expressly authorized exceptions, the only one here relevant provides:

> Returns and return information with respect to taxes imposed by chapter 35 (relating to taxes on wagering) shall, notwithstanding any other provision of this section, be open to inspection by or disclosure only to such persons and for such purpose or purposes as are prescribed by section 4424.

26 U.S.C. § 6103(o)(2) (1976).

The cross reference to section 4424 is to a specific nondisclosure provision in Chapter 35 of Title 26. That Chapter also imposes an occupational tax on wagering. 26 U.S.C. §§ 4401, 4411 (1976). Section 4424(a) provides:

> (a) General Rule.
> Except as otherwise provided in this section, neither the Secretary nor any other officer or employee of the Treasury Department may divulge or make known in any manner whatever to any person—
>
> (1) any original, copy, or abstract of any return, payment, or registration made pursuant to this chapter,
>
> (2) any record required for making any such return, payment, or registration, which the Secretary is permitted by the taxpayer to examine or which is produced pursuant to section 7602, or
>
> (3) any information come at by the exploitation of any such return, payment, registration, or record.

26 U.S.C. § 4424(a).

The records to which the suppression motion was directed were records of wagers obtained in two ways. One set of wagering records was retrieved from a storm sewer on October 18, 1978 by Internal Revenue Service Agents who observed Busk discarding them. Another set was obtained on May 11, 1979 when Internal Revenue Agents, executing search warrants, seized evidence from Busk's home, automobile, and person.[2] The United States concedes that records of wagers are records required for making a wagering tax return within the meaning of section 4424(a)(2).

Section 4424(b) provides:

> (b) Permissible disclosure.

---

**1.** The term "return information" means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over-assessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to

such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer....

26 U.S.C. § 6103(b)(2)(A) (1976 & Supp. V 1981).

**2.** A third set of wagering records was obtained from the Philadelphia Police Department, which obtained them on February 20, 1981 when Philadelphia police officers executed a search warrant at 3123 Richmond Street. The Richmond Street records were suppressed following our decision in *United States v. Busk*, 693 F.2d 28 (3d Cir.1982). *See* App. at 208.

A disclosure otherwise prohibited by subsection (a) may be made in connection with the administration or civil or criminal enforcement of any tax imposed by this title. However, any document or information so disclosed may not be—

(1) divulged or made known in any manner whatever by any officer or employee of the United States to any person except in connection with the administration or civil or criminal enforcement of this title, nor

(2) used, directly or indirectly, in any criminal prosecution for any offense occurring before the date of enactment of this section.

26 U.S.C. § 4424(b). This exception to the flat prohibition against disclosure in section 4424(a) is explicit and narrow. Disclosure may not be made except in connection with the civil and criminal enforcement of the Internal Revenue Code. Section 1955 of Title 18 is not an Internal Revenue Code provision.

Busk's position with respect to suppression is straightforward. The wagering records came into the possession of the Internal Revenue Service in connection with its administration of Title 26, and comprise records required for the making of a wagering tax return. Therefore, he argues, they fall within the prohibition against disclosure in section 4424(a), and their use in a prosecution under 18 U.S.C. § 1955 is not a permissible disclosure under section 4424(b).

B. The Government's Second Use Theory

The government points out that Busk was prosecuted not only for violation of 18 U.S.C. § 1955, but also, in separate prior proceedings, for violation of the excise and occupational taxes on wagering. 26 U.S.C. § 7201 (1976). Use of the retrieved and seized records, assuming the application of section 4424(a)(2) to them, was clearly permissible, under section 4424(b), in those prior proceedings. It is the government's theory that once evidence, otherwise within the nondisclosure ambit of sections 6103 and 4424, is made part of a trial record in any civil or criminal proceeding under the Internal Revenue Code, it is public for all purposes, including criminal prosecutions for non-revenue offenses. Thus, the government urges, it was permissible for the Justice Department to use that information in the section 1955 prosecution.

To evaluate the validity of the government's second use theory, one must consider the congressional intention in enacting section 4424, and the relationship between that statute and the privilege against self incrimination. In Marchetti v. United States, 390 U.S. 39, 60–61, 88 S.Ct. 697, 708–709, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 70, 88 S.Ct. 709, 714, 19 L.Ed.2d 906 (1968) the Supreme Court held that the privilege against self incrimination was a valid defense to a prosecution for noncompliance with the filing and registration requirements of Chapter 35 of the Internal Revenue Code. That was so, because, as then enacted, Chapter 35 mandated that the filings and registrations be maintained as public records. See 26 U.S.C. § 4412 (1964); 26 U.S.C. § 6107 (1964). The purpose of maintaining the required filings as public records was to make them available to prosecuting authorities interested in the enforcement of state and federal laws against wagering. The statutes compelling such public self incrimination were held to violate the fifth amendment.

In reaction to Marchetti and Grosso, Congress amended Chapter 35 so as to prohibit disclosure or use against a taxpayer of wagering tax return information, except in connection with the administration or enforcement of the Internal Revenue laws. Pub.L. No. 93–499, § 3(c)(1), 88 Stat. 1550 (1974). This restriction, Congress believed, would place the records and filings within the "required records" doctrine of Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), and outside the prohibition against compulsory self incrimination.

Once the fifth amendment purpose animating section 4424(a) is recognized, it is difficult, if not impossible, to read into that statute a second use exception. The most

obvious example which comes to mind is a civil proceeding relating to the accuracy of a wagering tax return, which was duly filed and found to be entirely accurate. If such a civil proceeding resulted in making the return a public record, accessible to both state and federal prosecutors, the end result would be compulsory self incrimination just as surely as was the case prior to the enactment of section 4424(a). If the statute were to be read in such a manner it would be as vulnerable to fifth amendment challenge as were the predecessor statutes invalidated in *Marchetti* and *Grosso*. Thus we do not rely on the circumstance, whether it was coincidental or deliberate, that the government chose to utilize the wagering records in an Internal Revenue Code case which antedated Busk's prosecution under 18 U.S.C. § 1955.

### C. *An Alternative Theory*

But while we cannot accept the government's second use theory because it is inconsistent with the statutory purpose of complying with the constitutional prohibition against self incrimination, that same purpose suggests appropriate limits to the application of section 4424(a). That section, like its more general counterpart, section 6103(a), prohibits disclosure only by government employees who come into possession of information for the purpose of revenue enforcement. While these prohibitions against disclosure have one clear governmental purpose of facilitating the collection of revenue by encouraging compliance with the tax laws, they have another clear purpose, more significant to taxpayers, of assuring that the compulsory filing and record keeping provisions of the Code are not used as devices for compelled self incrimination with respect to non-revenue matters. If the records in question have not been furnished to the Internal Revenue Service in a return, or surrendered in the course of an audit, and have not been maintained by the taxpayer, in compliance with the Internal Revenue Code for the purpose of making a return or submitting to an audit, then the self incrimination purposes of section 4424(a) are not implicated.

In this case the district court found that Busk never filed the required wagering tax returns. The Court found, moreover, that Busk's motivation for making the records was only to enable him to carry on his wagering business. These findings are not clearly erroneous. Indeed they are probably compelled by the undisputed evidence that some of the records were discarded in a storm sewer shortly after use. The court concluded that Busk "failed to show that these records were compelled to be kept by the statutory mandate of the wagering tax statute ...." App. at 219. Absent such a showing, we hold that at least in cases where the records have not been voluntarily presented to the Internal Revenue Service by a taxpayer, suppression on the authority of sections 6103(a) and 4424(a) of Title 26 was not required. *See United States v. Brian*, 507 F.Supp. 761, 768–69 (D.R.I.1981).

### III.

The motion to dismiss the indictment and the motion to suppress return information were both properly denied. The judgment appealed from will, therefore, be affirmed.