**UNITED STATES of America**

v.

**Charles N. CAPUTO, Leonard L. Martino.**

**Crim. No. 85–0150.**

United States District Court, E.D. Pennsylvania.

July 28, 1986.

As Amended Aug. 4, 1986.

Walter S. Batty, Jr., Ronald K. Noble, Gregg Vance Fallick, Asst. U.S. Attys., Philadelphia, Pa., for plaintiff.

Thomas Colas Carroll, Philadelphia, Pa., Thomas A. Livington, Pittsburgh, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

The government has filed a timely motion for reconsideration of the Memorandum and Order of April 28, 1986, as amended by the Order of May 1, 1986, 633 F.Supp. 1479, dismissing Counts One (conspiracy) and Two (obstruction of justice) of the indictment and suppressing all evidence of any conversations of either or both defendants with Agent Vaules on or after January 25, 1985, the date of issuance of the subpoena to "Wayne Hess."

1. I referred to the subpoena as a "sham" because the prosecutor who supervised the investigation of defendants and whose name appeared on the subpoena referred to it as a sham. Stipulation ¶ 10. I

concluded that the subpoena was shown to defendants prior to their appearances before the grand jury on February 11, 1985. This conclusion was based on what I regard as a reasonable reading of paragraphs 10–11 of the stipulation and the government's response to Caputo's omnibus pretrial motions, at 6. In a conference on May 6, 1986, the government acknowledged that this conclusion was based on representations made, at least in part, by the government.

The government now requests that I reopen the record to hear evidence as to when the subpoena was shown to defendants and whether they were prejudiced by its issuance. The government represents that at such a hearing it would establish that Agent Vaules did not show defendants the sham subpoena until February 11, 1985, that is, on the day they appeared before the grand jury but after they testified; also that the "actual display of the subpoena to defendants did not make it any more likely that defendants would continue to trust 'Wayne Hess' and talk freely with him." Government's memorandum on reconsideration, at 18.

At the May 6 conference the government candidly admitted that it had been given an opportunity to present all evidence it wished to and that the evidence it now seeks to admit is not newly discovered. The government apparently decided not to offer this evidence because defendants did not request the Court to suppress any of their statements other than those made before the grand jury. Government memorandum on reconsideration, at 15. However, during one of the arguments on defendants' motion, I stated that I was troubled by the government's use of a sham subpoena and requested further briefing on the propriety of the subpoena. The parties filed additional briefs and the government did not request a hearing. I will not reopen the record.[1]

1. In any event, I believe that issuance of the subpoena prejudiced defendants whether or not it was shown to them before they testified. The government concedes that the subpoena was

issued and that on January 30 and February 2, the agent truthfully told defendants that he had been subpoenaed.

2. I concluded that "[t]he government properly may use a host of ploys in furtherance of an undercover investigation, but issuance of a spurious order of Court obviously exceeds the bounds of propriety." Memorandum, at 26 (footnote omitted).

The government disagrees and states:

"A contrived judgment of conviction and sentence might be helpful to provide 'cover' for an undercover agent who wanted to establish his 'credentials' with the subjects of a criminal investigation. Similarly, a contrived complaint and warrant or a contrived search warrant, might also be useful in some undercover investigations.

\* \* \* \* \* \*

"In summary, the government does not believe that grand jury subpoenas or other federal court documents are so special or different from other documents that they alone can be labeled as 'off limits' for purposes of an undercover investigation."

Government memorandum on reconsideration at 9–10.

In support of this statement, the government cites *United States v. Murphy*, 768 F.2d 1518, 1527 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986).[2] Murphy was an Associate Judge of the Circuit Court of Cook County and was accused of accepting bribes to fix the outcome of hundreds of cases. As part of their investigation of Cook County courts, which led to Murphy's indictment, the FBI and federal prosecutors used contrived cases. In those cases, FBI agents posed as corrupt lawyers who would represent defendants in "ghost-written cases"; the agents would file complaints and testify about fictitious events. Murphy argued that he had committed no crime because the cases which he allegedly fixed were not genuine cases but this argument was rejected. The Court stated that "there is no 'crime' ... in the sense that the scheme cannot come to fruition, and the evils against which the laws are set cannot occur. Yet courts regularly sustain convictions based on these entrepreneurial efforts." *Id.* at 1528. (Citations omitted).

*Murphy* is not applicable to the present case because the contrived documents in *Murphy* did not purport to be Orders of the Court; they were supposed to be pleadings. The government misses this distinction when it asserts that "[t]he issuance of the 'Hess' subpoena is no more a reflection on the integrity of the courts than were the contrived prosecutions in *Murphy*...." Government memorandum on reconsideration, at 9. In addition, in *Murphy*, the government notified the Presiding Judge of the Circuit Court's Criminal Division of the investigation. In the present case, the government concedes that notice of the use of the subpoena was not given to the judge supervising the grand jury. Government's memorandum on reconsideration, at 10.[3]

3. The government now concedes that I properly rejected its previous argument as to lack of standing. However, the government makes a new standing argument; it asserts that *Murphy* makes "clear that a criminal defendant does not have standing to raise an issue regarding the propriety of an undercover technique. if the only question regarding the technique is that it would call into question the judiciary's independence from the executive branch of government." Government memorandum on reconsideration at 11. In my view, the government misreads *Murphy*; the *Murphy* Court did not consider or decide whether a defendant has standing to raise an

---

2. The government also refers to an indictment of Joseph Inadi, Cr. No. 83–109 (E.D.Pa.). In that matter, the prosecutors apparently used contrived testimony to trace leaks from the grand jury. In its discussion of this case, the government has omitted to state the fact that in *Inadi* the government, in advance of the event, disclosed to the judge supervising the grand jury its plan to use the contrived testimony and secured his approval.

3. The government states that in the future prosecutors in this District will give the judge supervising the grand jury notice of the use of intentionally false judicial documents or contrived prosecutions in undercover investigations. *Id.*

issue which may involve exercise of a Court's supervisory power.

4. The government asserts that issuance of the subpoena does not constitute prosecutorial misconduct justifying suppression of evidence under the Court's supervisory powers. It argues that "a finding of prosecutorial misconduct would seem to require a finding of a violation of a known duty or a known ethical standard." Government's memorandum on reconsideration at 24, citing *United States v. Busk*, 730 F.2d 129, 130 (3d Cir.1984). In my view, however, no specific prohibition against creating a sham order of court was necessary. Any member of the Bar ought to know that such conduct is impermissible. The need to protect the integrity of the judicial process justified issuance of the Order of April 25, 1986.

Nor does *Busk* govern this case. In *Busk* the Court did not consider the question whether a Court must find an intentional violation of a known duty before concluding that a prosecutor engaged in prosecutorial misconduct. In *United States v. Serubo*, 604 F.2d 807, 818–19 (3d Cir.1979), the Court of Appeals had held that dismissal of an indictment is an "appropriate exercise of supervisory authority over the misconduct of prosecutors appearing before federal grand juries with the intent to improperly prejudice the grand jury against a defendant." *United States v. Busk*, 730 F.2d at 131. In *Busk*, the Court held when the illegal evidence is presented to the grand jury before a suppression motion has been made, the *Serubo* rule is not applicable.

5. The government argues, for the first time, that, pursuant to 18 U.S.C. § 3501, I may not suppress any of defendants' statements if they were voluntary. The government represents that, if granted a hearing, they would present evidence establishing that the defendants' statements were made voluntarily. I have been cited to no authority that voluntary statements made in non-interrogation settings are confessions within the meaning of § 3501(e). *United States v. DiGilio*, 538 F.2d 972 (3d Cir.1976), cited by the government, involved an FBI interrogation, as did *United States v. Crook*, 502 F.2d 1378 (3d Cir. 1974), upon which *DiGilio* relies. Moreover, the § 3501 standards for voluntariness seem inapplicable to a non-interrogation setting. The standards at § 3501(b) obviously deal with a situation where the defendant is being questioned by a person known by him to be a law enforcement officer.

The motion for reconsideration will be denied.